**Lawson F. BERNSTEIN, Trustee in Bankruptcy of Frigitemp Corporation, Plaintiff,**

v.

**IDT CORPORATION, George Davis, General Dynamics Corporation, Panagiotis Takis Veliotis, James H. Gilliland, Paulette Veliotis, Elizabeth Gilliland, Lenora L. Cable a/k/a Lenora Davis, Mark J. Deroche, and John Doe Defendants whose identities are currently unknown to plaintiff, Defendants.**

Civ. A. No. 83–294–WKS.

United States District Court,
D. Delaware.

March 2, 1984.

William Prickett, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., David Berger, H. Laddie Montague, Jr., Howard Langer, Alan Sandals, Berger & Montague, Philadelphia, Pa., for plaintiff.

Paul H. Spiller, Kimmel & Spiller, Wilmington, Del., Matthew L. Byrne, Hollman & Byrne, New York City, for defendants Davis and IDT Corp.

H. James Conaway, Jr., Edward B. Maxwell, II, Young, Conaway, Stargatt & Taylor, Wilmington, Del., Albert E. Jenner, Jr., Thomas P. Sullivan, Nicholas D. Chabraja, Jayne W. Barnard, Jenner & Block, Chicago, Ill., for defendant General Dynamics Corp.

Victor F. Battaglia, Gary W. Aber, Biggs & Battaglia, Wilmington, Del., Randy Paar, Anderson, Russell, Kill & Olick, New York City, for defendants Panagiotis Takis Veliotis and Paulette Veliotis.

## OPINION

STAPLETON, Chief Judge:

Plaintiff, Lawson F. Bernstein, Trustee in Bankruptcy of the Frigitemp Corporation ("Frigitemp") has brought suit against a number of defendants to recover funds for the estate. Defendants include the General Dynamics Corporation ("General Dynamics"), P. Takis Veliotis and James Gilliland, former officers of General Dynamics' Quincy Shipbuilding Division, the IDT Corporation ("IDT"), and George Davis, President of IDT, and a former Frigitemp Vice-President. Other named defendants include the wives of Veliotis, Gilliland and Davis, and one Mark Deroche, believed to be a principal of IDT.

Frigitemp, a New York corporation, was formerly engaged in the marine construction business and did substantial subcontracting work on vessels built by General Dynamics' Quincy Shipbuilding Division in Quincy, Massachusetts. During the years 1973 through 1977, Veliotis was President and Gilliland was Vice-President of the Quincy Shipbuilding Division. Davis was Senior Vice-President with responsibility for Frigitemp's Quincy subcontracts.

Plaintiff alleges that Veliotis and Gilliland extorted millions of dollars in kickbacks and illegal rebates in return for awarding the subcontracts to Frigitemp. To pay these kickbacks, Davis is alleged to have set up various corporations, and diverted funds from Frigitemp through a complex scheme of fraudulent billing. Finally, when Frigitemp was on the verge of bankruptcy, Davis is alleged to have incorporated IDT for the purpose of further draining Frigitemp assets and continuing the dealings with Veliotis and Gilliland.

IDT was incorporated in early 1978 and approximately one month later Frigitemp filed for and obtained protection under Chapter XI of the Federal Bankruptcy Laws. Almost immediately, General Dynamics terminated its contracts with Frigitemp and transferred them to IDT. This is alleged to have constituted a fraudulent conveyance.

Frigitemp was adjudged bankrupt and the plaintiff appointed as Trustee in Bankruptcy in May 1979. In January 1980, a bankruptcy judge of the Southern District of New York authorized the trustee to conduct an investigation into the circumstances surrounding the Frigitemp bankruptcy and the possibility that meritorious claims might exist against Davis, IDT and employees of General Dynamics. Pursuant to Bankruptcy Rule 205, the trustee deposed Davis, Veliotis and Gilliland. The trustee/plaintiff alleges that he was induced by the perjurious testimony of Davis, Veliotis and Gilliland to enter into settlements and releases of Davis, IDT, General Dynamics, Veliotis, Gilliland, and other co-conspirators. Plaintiff alleges that Veliotis and Gilliland were testifying on behalf of General Dynamics and that General Dynamics

knew of their allegedly perjurious testimony and actively sought to conceal both the perjury and the illegal scheme.

## I. GENERAL DYNAMICS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff charges General Dynamics with violation of Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (1970), as well as common law fraud and negligent entrustment or negligent supervision. Before the Court at this time is General Dynamics' motion to dismiss plaintiff's RICO claims for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). General Dynamics argues further that in the absence of a viable federal claim, the state law fraud and negligence claims should be dismissed for lack of pendent jurisdiction, and that, in addition, plaintiff has failed to allege a state law claim upon which relief can be granted.

### A. *The Claims Under Sections 1962(c) And (d)*

Section 1962(c) of RICO proscribes conduct whereby a "person" or persons conduct the affairs of an "enterprise" through a "pattern of racketeering activity." Each of these terms is further defined in Section 1961 of the Act: A "person," Section 1961(3), "includes any individual or entity capable of holding a legal or beneficial interest in property." An "enterprise," Section 1961(4), "includes any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." A "pattern of racketeering activity", Section 1961(5), "requires at least two acts of racketeering activity" occurring within a ten year period. Included in the list of predicate acts of racketeering is "any offense involving fraud connected with a case under title 11, ...", Section 1961(1)(D).

■ Dismissal of a complaint under Rule 12(b)(6) for failure to state a claim is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–2, 2 L.Ed.2d 80 (1957). At the same time, the allegations of the complaint must provide some reason to believe that the plaintiff may be entitled to relief.

■ There are four elements of a claim under Section 1962(c). The defendant must be alleged and ultimately shown to be (1) a person, (2) associated with an enterprise affecting interstate or foreign commerce, (3) who has conducted the affairs of that enterprise (4) through a pattern of racketeering activity. In paragraph 18 of the complaint the trustee alleges that "Veliotis, Gilliland and General Dynamics conducted the affairs of General Dynamics through a pattern of racketeering activity." It is clear from a reading of Count I that this allegation was directed to the third and fourth elements of a Section 1962(c) violation.[1]

---

1. Contrary to the trustee's present suggestion, the complaint identifies no other enterprise which General Dynamics conducted the affairs of through a pattern of racketeering activity. In paragraph 16 of the complaint, the trustee alleges that the defendants in the course of their conspiracy "utilized" various "enterprises" including General Dynamics, IDT, fourteen other named corporations and "other associations in fact consisting of defendants and their co-conspirators." The trustee now suggests that this constitutes an allegation that General Dynamics conducted the affairs of an association in fact consisting of General Dynamics and the other defendants through a pattern of racketeering activity. In context, however, paragraph 16 will

not support such an argument. While paragraph 16 does indeed use the word "enterprises" it is clearly not intended as an allegation that the defendants conducted the affairs of all of the named corporations and associations through a pattern of racketeering activity.

In its brief, the trustee relegates paragraph 18 of the complaint to a footnote and relies primarily on the assertion that General Dynamics participated in the affairs of an association in fact consisting of itself and the other defendants. If the trustee intends to rely on such a claim, he should seek to amend the complaint to allege it. That claim would require materially different supporting evidence than the claim asserted in

By so alleging, the trustee poses the troubling issue of whether a corporate enterprise whose affairs have been conducted through a pattern of racketeering activity can be held liable as a "person" which is associated with itself and which participated in the conduct of its own affairs. The courts that have considered this person/enterprise issue have reached differing conclusions. The Fourth Circuit in *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.1982) concluded that the culpable person must be an entity distinct and separate from the enterprise with which it, he or she associates. The Eighth Circuit, in *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982), reached the same conclusion. On the other hand, the Eleventh Circuit decided that a corporation could be both the "person" and the "enterprise" for purposes of the RICO statute. *United States v. Hartley*, 678 F.2d 961 (11th Cir.1982). I need not resolve this issue, however. In *Computer Sciences* and *Hartley* the courts were concerned solely with criminal responsibility and, accordingly, were forced to decide whether a corporation can be both a "person" and the "enterprise" within the meaning of RICO.[2] I am confronted with a question of whether General Dynamics may be held civilly liable based on the allegations of the complaint and I conclude that the answer is yes. When conduct is proscribed by a federal statute and civil liability for that conduct is explicitly or implicitly imposed, the normal rules of agency law apply in the absence of some indication that Congress had a contrary intent. As the Supreme Court recently observed in the context of the antitrust statutes:

[W]e can honor the statutory purpose best by interpreting the antitrust private cause of action to be at least as broad as a plaintiff's right to sue for analogous torts, absent indications that the antitrust laws are not intended to reach so far....

*American Soc. of M.E.'s v. Hydrolevel Corp.*, 456 U.S. 556, 569, 102 S.Ct. 1935, 1944, 72 L.Ed.2d 330 (1982).

In *American Society of Mechanical Engineers v. Hydrolevel Corp.*, the Court held the Association liable for treble damages as a result of the anticompetitive conduct of the chairman of one of its committees under the agency rule that principals are "liable when their agents act with apparent authority." 456 U.S. at 565–66, 102 S.Ct. at 1942. Citing the *Restatement of Agency*, the Court noted that a "principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority." 456 U.S. at 566, 102 S.Ct. at 1942.

The trustee here alleges that Veliotis and Gilliland committed a statutory tort by conducting the affairs of General Dynamics through a pattern of racketeering activity in violation of RICO. That activity included extortion of kickbacks and misrepresentation in a bankruptcy proceeding. I perceive nothing in RICO or its legislative history which would suggest that the normal rules of agency law should not apply to the civil liability created by that statute. To the contrary, as in *American Society of Mechanical Engineers*, it appears to me that application of the doctrines of apparent authority and *respondeat superior* will, at least, in most instances, further the

---

the present complaint and could provoke materially different defenses. General Dynamics can easily be shown to be an enterprise; establishing an association in fact consistent with the requirements of *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) would be a substantially more burdensome task.

**2.** Holding the corporate "enterprise" responsible as a person will in some circumstances serve the purposes of RICO. Even those who urge an expansive interpretation, however, concede that

there are other circumstances in which it "would be perverse" to so hold. G.R. Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 710 F.2d 1361 (1982). It is difficult to read the text of the statute in a way which would deem a corporate "enterprise" to constitute a "person" conducting its own affairs in the former category of cases and not in the latter. For this reason, in a criminal responsibility context where one is confined to the statute, the Fourth Circuit appears to have the better view.

statutory goals. Since I cannot say at this stage that General Dynamics cannot be shown, consistent with the allegations of the complaint, to be liable for the conduct of Veliotis and Gilliland, its motion to dismiss the Section 1962(c) claim must be denied.[3]

■ In addition to his section 1962(c) claim, the trustee has alleged a claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." In essence, then, the section 1962(d) claim charges General Dynamics with conspiracy to violate section 1962(c). In *United States v. Riccobene*, 709 F.2d 214, 224 (3d Cir.1983) the Third Circuit discussed the nature of a RICO conspiracy: "[U]nder RICO, it is an agreement 'to conduct or participate ... in the conduct of [an] enterprise's activities' that is prohibited, not an agreement to commit a pattern of racketeering activity alone." The same general principles of agency under which I have found that plaintiff has stated a claim against General Dynamics under section 1962(c) would appear to support a claim under 1962(d) as well. Thus, I conclude that the trustee may be entitled to relief against General Dynamics on the theory that it may be responsible for an agreement of Veliotis and Gilliland to conduct the affairs of General Dynamics in a manner which violates RICO.[4]

General Dynamics urges further that plaintiff has failed to plead a violation of Section 1962(d) because his allegations of conspiracy are "conclusory and insufficient as a matter of law." General Dynamics urges that the complaint fails to meet the stricter standards of pleading under which allegations of civil conspiracy have traditionally been judged. General Dynamics cites *Black and Yates v. Mahogany Assn.*, 129 F.2d 227, 231 (3d Cir.1941), *cert. den.*, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942), where the Third Circuit held that:

"A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment."

Similarly, General Dynamics argues that plaintiff fails to adequately set forth the "details of time, place, and the alleged effect of the conspiracy" as required. *Turley v. Hall's Motor Transport*, 296 F.Supp. 1183, 1187 (M.D.Pa.1969).

■ The trustee has set forth the facts alleged to constitute the RICO conspiracy with considerable detail as to time, place, object, and accomplishment. Even if it could be said that "the complaint does not allege precisely what [each defendant's] role in the scheme was, it does allege the outline of that scheme and does identify [the participants]. This is sufficient to put [General Dynamics] on notice of the claim against [it]." *Farmers Bank of the State of Delaware v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1282 (D.Del.1978).

In antitrust cases, courts have been very reluctant to dismiss on the pleadings: "[W]here 'the proof is largely in the hands of the alleged conspirators' [citation omitted] dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). *Accord Knuth v. Erie-Craw-*

---

**3.** For the same reasons the appellant in *American Society of M.E.* was found liable for treble damages, I conclude that if General Dynamics is civilly responsible for the conduct of Veliotis and Gilliland, it could be required to pay treble damages.

I have considered the other alleged deficiencies in the plaintiff's assertion of his Section 1962(c) claim, but find the allegations of the complaint to be sufficient.

**4.** As with the Section 1962(c) claim, the briefing suggests that plaintiff believes he can prove that General Dynamics agreed to participate in the affairs of an "association in fact" through a pattern of racketeering activity, but, as discussed previously, the complaint fails to plead such an "association in fact." If plaintiff intends to rely on this additional theory, he should seek to amend his complaint accordingly.

*ford Dairy Cooperative Assn.*, 395 F.2d 420 (3d Cir.1968). This principle would seem equally applicable where a RICO conspiracy is alleged.

### B. *The State Law Claims*

■ Having found the complaint to state a claim "arising under" the laws of the United States, this Court has jurisdiction under 28 U.S.C. § 1331(a). That being the case, there is pendent jurisdiction over the plaintiff's two state law claims as both the state and federal claims clearly derive from a "common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[5]

General Dynamics has moved to dismiss the plaintiff's claim of common-law fraud for failure to plead the circumstances constituting fraud with the particularity required by Rule 9(b), Fed.R.Civ.P. However, as this Court explained in *du Pont v. Wyly*, 61 F.R.D. 615, 630–31 (D.Del.1973), Rule 9(b) does not require fact pleading. Instead, "the rule requires sufficient factual specificity to 'apprise the defendants of charges against them.'" This is only "slightly more notice than would be forthcoming under Rule 8 ...." *Denny v. Carey*, 72 F.R.D. 574, 578 (E.D.Pa.1976). In any event, Rule 9(b) does not require "an exhaustive cataloguing of facts but only sufficient factual specificity to provide assurance that the plaintiff has 'investigated ... the alleged fraud' and reasonably believes that a wrong has occurred." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). It is said that the reason fraud has historically been required to be pleaded with some degree of specificity is to protect potential defendants from baseless or irresponsibly made charges involving moral turpitude. Wright and Miller, 5 *Federal Practice and Procedure*, § 1296, at 399–400 (1969).

■ In light of the cases and commentary, there can be little doubt that the plaintiff has set forth the allegations of bankruptcy fraud in accordance with the particularity requirements of Rule 9(b). The particular circumstances alleged to constitute bankruptcy fraud are disclosed and described in some detail; e.g., the alleged perjury of defendants Veliotis and Gilliland, the transfer of contracts from Frigitemp to IDT, the release and settlement obtained by General Dynamics and its co-defendants. Moreover, the existence of a factual basis for these allegations is a matter of public record in *United States v. Davis*, 702 F.2d 418 (2d Cir.1983).

I conclude that the circumstances of the trustee's common-law fraud claim have been pleaded in conformity with Rule 9(b).

■ Finally, the trustee charges General Dynamics with negligently or recklessly placing Veliotis and Gilliland in positions enabling them to extort illegal kickbacks, and with negligently or recklessly keeping them in such positions at a time when it knew, or with reasonable care, should have known, of their illegal activities. The trustee alleges that the law of each jurisdiction that might potentially govern this claim recognizes a cause of action for negligent entrustment or supervision. General Dynamics argues that under the law of none of the several potentially relevant states would a claim for negligent entrustment be available under the facts of this case.

It is true, as General Dynamics urges, that the term "negligent entrustment" is used most frequently when one negligently entrusts or supplies a motor vehicle or other dangerous chattel to another. On the other hand, it is hardly a novel principle of law that a master who retains an employee that he knows or should know is incompetent or otherwise unfit may be liable for resulting harm to third persons. The allegations in the last count of the complaint would appear to state a common law claim under the theory articulated in 2 *Restatement of Torts*, 2d, Section 307:

---

**5.** However, by setting forth in the complaint the states of incorporation and the principal places of business of both Frigitemp and General Dynamics, as well as the jurisdictional amount, the plaintiff has adequately alleged the existence of diversity jurisdiction. General Dynamics has not controverted any of these factual allegations.

Use of Incompetent or Defective Instrumentalities

It is negligence to use an instrumentality, whether a human being or a thing, which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others.

I conclude that it would be a mistake to foreclose plaintiff from further development of a record in support of this theory.

## II. IDT's MOTION TO DISMISS

IDT has moved to dismiss the claims against it (1) pursuant to the doctrine of *forum non conveniens,* (2) because it fails to allege a claim under RICO upon which relief could be granted against IDT and, (3) because the trustee has not alleged fraud with sufficient particularity. Its motion must be denied.

The present record does not show the kind of exceptional circumstances which would entitle IDT to the extreme relief of a dismissal on grounds of *forum non conveniens.* See 15 Wright, Miller and Cooper, *Federal Practice and Procedure* § 3828 at p. 177 (1976). If it wishes to apply for a transfer under 28 U.S.C. § 1404(a), it may do so.

■ Paragraph 19 of the complaint alleges that defendant "Davis while employed by Frigitemp and while employed by IDT conducted and participated ... in the conduct of Frigitemp's and/or IDT's affairs through a pattern of racketeering activity." As in the case of General Dynamics, I cannot say that the trustee will be unable to prove a set of facts consistent with the allegations of the complaint under which IDT could be held liable for the alleged RICO violations of Davis.[6] I reach a contrary conclusion with respect to the trustee's claim under Section 1962(d). After considerable study of the allegations of Count I, I am frankly at a loss to say who the trustee claims conspired with Davis to conduct the affairs of "Frigitemp and/or

IDT." While the trustee may be able to allege a claim against IDT, it is entitled to some clearer indication of the trustee's theory than is supplied by the current complaint. Unless the trustee amends his Section 1962(d) claim against IDT, that claim will be dismissed.

■ IDT's argument that the trustee has not alleged a fraud claim against it with the particularity required by Rule 9 does not differ materially from the Rule 9 argument made by General Dynamics and must similarly be rejected.

## III. THE VELIOTIS' MOTION TO DISMISS FOR WANT OF PERSONAL JURISDICTION AND PROPER VENUE

The trustees' claims involve (1) alleged kickbacks paid by Frigitemp and IDT to Veliotis and Gilliland in Massachusetts in connection with work performed there and (2) alleged perjury in depositions which were conducted in Massachusetts in connection with a bankruptcy proceeding in New York. The complaint also alleges, however, that defendant Davis, as the agent of Veliotis and as a member of the conspiracy which perpetrated the alleged kickback and bankruptcy fraud schemes, caused IDT to be incorporated in Delaware for the sole purpose of causing the kickback scheme to be continued after Frigitemp went into bankruptcy.

An affidavit filed in support of the motion of Mr. and Mrs. Veliotis avers that they are not residents of the State of Delaware, do not own or have an interest in property in this state, do not conduct any business in the State of Delaware and have never had an agent in the State of Delaware.

■ I agree with Mr. and Mrs. Veliotis that the current record does not establish personal jurisdiction over them and demonstrates an absence of venue as to them. Accordingly, I will grant their motion to

---

**6.** Here also the trustee's briefing relies principally on a theory involving an enterprise consisting of an association in fact which includes

IDT. If the trustee wishes to make this claim, he should make it in his complaint.

dismiss unless a motion to transfer is promptly made and granted.

In *Instituto Bancario Italiano v. Hunter Eng. Co.*, 449 A.2d 210, 228 (Del.Supr. 1982), the Supreme Court of Delaware expressly approved Chancellor Marvel's earlier interpretation of Delaware's Non-Resident Director Consent to Service Statute, 10 Del.C. § 3114, which limits the "consent" required to claims based on acts performed by a director of a Delaware corporation in his capacity as such. *See Hana Ranch v. Lent*, 424 A.2d 28, 30–31 (Del.Ch. 1980). Neither the complaint nor plaintiff's briefing identify any act performed by Mr. Veliotis in his capacity as a director of a Delaware corporation that has anything to do with the claims here asserted.[7] Section 3114 is, accordingly, of no aid to plaintiff.

The plaintiff has shown that facts might be developed through discovery which would bring this case within 10 Del.C. § 3104(c)(1) and would make an assertion of jurisdiction over the Veliotis' consistent with the due process clause. *See e.g., Instituto Bancario Italiano v. Hunter Eng. Co., supra.* Ordinarily, I would permit discovery limited to building a record to demonstrate the existence of jurisdiction on this basis. Establishing facts which would bring this situation within 10 Del.C. § 3104(c)(1), however, would not make this District a proper venue[8] and there must be

both jurisdiction and proper venue in order to proceed.[9]

The complaint alleges that venue lies, as to the defendants generally, under 28 U.S.C. § 1391 and 18 U.S.C. § 1965. The trustee understandably relies only on the latter statute to show venue as to his claims against Mr. and Mrs. Veliotis. Whatever may be the meaning of the phrase "the judicial district ... in which the claim arose," as used in Section 1391(b), it cannot include Delaware when there are two other Districts having substantially greater contacts with the subject matter of plaintiff's claims. *Cf. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Accordingly, I now turn to Section 1965(b) of the RICO statute.[10]

Section 1965(b) provides:

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

The legislative history of Section 1965 can be read to suggest that subsection (b) is only a service of process provision.[11] I

---

7. The complaint does allege that Mr. Veliotis gave his deposition to the Bankruptcy Court as a director of General Dynamics. Plaintiff's brief concedes, however, that the allegedly fraudulent deposition occurred in February 1980 and that Mr. Veliotis first became a director of General Dynamics in May of that year.

8. Wright & Miller, *Federal Practice & Procedure* § 3803.

9. Id. at § 3801. The Section 3104(c)(1) issue may be of little practical importance in any event because the only basis for venue is 18 U.S.C. § 1965(b) and, if applicable, that section would confer both personal jurisdiction and venue. *Accord Mariash v. Morrill*, 496 F.2d 1138, 1142–3 (2d Cir.1974).

10. The trustee does not rely upon 18 U.S.C. § 1965(a) to establish venue. While his briefing of IDT's motion contains footnote references to that statutory provision (Pl. Memo., p. 25, n. **),

he simply refers the Court to his briefing of the Veliotis motion. That briefing does not cite Section 1965(a), much less rely upon it as a basis for venue.

11. The House Report's section-by-section analysis comments, for example:

Section 1965 contains broad provisions regarding venue and process, which are modeled on present antitrust legislation.

Section (a) establishes venue for civil proceedings under the chapter wherever the defendant resides, is found, has an agent, or transacts his affairs, without regard to the amount in controversy.

Subsection (b) provides nationwide service of process on parties, if the ends of justice require it, in actions under section 1964.

House Report No. 91–1549, 1970 U.S.Code Cong. & Adm.News 4007, 4034.

find it difficult to read its text to be this limited, however. Subsection (b) clearly seems intended to give a court in which a RICO case is properly pending the authority to adjudicate with respect to the interests of anyone whose presence is shown by a party to be required by the ends of justice. It does, however, contemplate a showing and an exercise of the Court's discretion prior to the service of process on a party who would not otherwise be within the Court's reach.[12] Given the broad authority conferred by subsection (b) for bringing people into a case who do not have substantial contacts with the forum district, it is understandable that Congress would require Court approval before the burden of responding to process is imposed. That intent must be respected and the trustee should not be put in a better position than he would occupy if he had sought prior approval. This means *inter alia* that Mr. and Mrs. Veliotis should not be subjected to discovery as parties prior to an "ends of justice" determination.

Despite these conclusions, I would be inclined to deny the Veliotis' motion to dismiss if the present record satisfied the "ends of justice" standard. It does not, however. While I do not agree that subsection 1965(b) requires a showing that the plaintiff's claim arose in the forum district (i.e., that the forum district is the district, or one of the districts, having the closest contacts with the claim),[13] I am not prepared to say that the ends of justice require

Mr. and Mrs. Veliotis to litigate in Delaware under the circumstances of this case in the absence of a showing that there is no district having greater contacts with plaintiff's claims in which as much or more of the entire controversy could be litigated. No such showing has been made by plaintiff.[14]

Despite the conclusions I reached on the venue issue, I believe that the trustee should be afforded the opportunity to move for a transfer to Massachusetts or New York under 28 U.S.C. § 1406. He asked for this in his brief as alternative relief, but the defendants should have an opportunity to address that issue before it is decided.

## IV. THE DAVIS' MOTION TO DISMISS FOR WANT OF PERSONAL JURISDICTION AND PROPER VENUE

George and Lenora Davis stand in a position similar to that of Mr. and Mrs. Veliotis. The only material difference[15] is that Mr. Davis is alleged to have testified falsely in his capacity as a director of IDT, a Delaware corporation, and if proven, this allegation would make him amenable to the jurisdiction of this Court by virtue of 10 Del.C. § 3114.[16] As with the Veliotis', however, the only venue alleged with respect to Mr. and Mrs. Davis is 18 U.S.C. § 1965(b). Here also, the plaintiff has made no showing that the ends of justice require the Davis' to litigate in Delaware.[17]

---

**12.** *King v. Vesco*, 342 F.Supp. 120, 121, n. 1 (N.D.Cal.1972).

**13.** I stated in *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1282, n. 8 (D.Del.1978) that I would apply Section 1965(b) if the plaintiff there could show that its claim arose in Delaware and that there was no other forum in which all defendants could otherwise be joined. Such a situation would be an appropriate one for the invocation of that section. As my later opinion in that case indicates, however, I have concluded that Section 1965(b) is not limited to such a situation. (Slip Opinion August 9, 1978).

**14.** In view of the conclusion which I reach, I need not address Mrs. Veliotis' motion to dismiss for failure to state a claim.

**15.** Counsel for Davis and IDT stipulated that service upon them in New York would be

deemed to have been made on the Davis' and IDT personally. I construe this as no more than an agreement that the situation is to be judged as though the Davis' and IDT had been served in New York and I conclude that the stipulation has no bearing on the issues resolved in this opinion.

**16.** It is possible that plaintiff could also show jurisdiction over the Davis' under 10 Del.C. § 3104(c)(1). *See Instituto Bancario Italiano Sp. v. Hunter Eng. Co., Inc., supra.*

**17.** In view of the conclusion which I reach, I need not address Mrs. Davis' motion to dismiss for failure to state a claim.

## V. MOTION WITH RESPECT TO THE CROSSCLAIMS AND COUNTERCLAIMS OF GENERAL DYNAMICS

Special emphasis should be placed on the fact that General Dynamics has filed no Answer to the complaint. Nonetheless, on October 25, 1983, General Dynamics filed an extensive document entitled "Counterclaims and Crossclaims of General Dynamics Corporation." The crossclaim is directed against IDT, Veliotis, Gilliland, GEORGE G. DAVIS, Lee and John Doe defendants. This document has spawned a flurry of motions to dismiss or to strike. They will all be granted.

Rule 13(a), Fed.R.Civ.P. provides that a counterclaim shall be stated in a pleading:

A *pleading* shall state as a counterclaim any claim which at the time of serving the *pleading* the *pleader* has against any opposing party.... [Emphasis added]

Rule 7, Fed.R.Civ.P. lists each pleading permitted under the Federal Rules and does not include a counterclaim as a pleading:

(a) Pleadings. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a crossclaim, if the answer contains a crossclaim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. *No other pleading shall be allowed,* except that the court may order a reply to an answer or a third-party answer. [Emphasis added]

Wright & Miller explain:

Rule 7(a) purports to enumerate all of the pleadings permitted in federal practice. In doing so, it sharply limits the nature and number of pleadings that are available under the federal rules....

Ordinarily, the complaint and answer are the only pleadings that are necessary or will be allowed. 5 Wright & Miller, *Federal Practice and Procedure* § 1183.

*Accord* 2A Moore's Federal Practice § 7.02.

Confirming the above, Rule 12(a), Fed.R. Civ.P., only requires response to a counterclaim when the counterclaim is stated in an answer:

The plaintiff shall serve his reply to a *counterclaim in the answer* within twenty (20) days after service of the *answer....* [Emphasis added]

In *In re Cessna Distributorship Antitrust Litigation,* 532 F.2d 64, 67 (8th Cir. 1976), the Eighth Circuit construed the identical provisions of the Federal Rules relating to cross-claims. The Eighth Circuit was unequivocal in its conclusion:

Appellants could assert the cross-claim only in their answer.

In a footnote to its conclusion the court explained:

A cross-claim must be stated in a pleading. *See,* Fed.R.Civ.P. 12(b) and 13(g). At the same time, it is not itself a pleading. *See,* Fed.R.Civ.P. 7(a). The only pleading filed by the Cessna defendants here was their answer.

Each of the Rules cited by the Eighth Circuit contains virtually identical operative language relating to counterclaims. Thus, because General Dynamics has filed no pleading, its counterclaims must be dismissed and/or stricken at this juncture.

## VI. CONCLUSION

The motions to dismiss of General Dynamics and IDT will be denied. A period of three weeks will be permitted in which any party wishing to move for a transfer under 28 U.S.C. § 1404(a) or § 1406 may do so. If no transfer motions are filed or none is granted, Mr. and Mrs. Veliotis and Mr. and Mrs. Davis will be dismissed from the case. Discovery will be stayed as to them until any motion to transfer is resolved. It may go forward as to General Dynamics and IDT. If the trustee wishes to rely upon an "association in fact" theory, he should act to amend his complaint within three weeks. The crossclaims and counterclaims of General Dynamics will be dismissed without prejudice to their being reasserted in its answer.