Ahmed SALVADOR

v.

Carl MAZZOCONE, individually and Lewis Kates, Joseph Livesey, Carl Mazzocone, d/b/a Kates, Livesey & Mazzocone, and Bell Savings Bank, Pa. S.A. et al.

No. 86–7605.

United States District Court, E.D. Pennsylvania.

June 22, 1987.

Gregory J. Pavlovitz, Philadelphia, Pa., for Bell Sav. Bank.

Elizabeth Ainslie, Jack L. Bulkin, Philadelphia, Pa., for Salvador.

MEMORANDUM

NEWCOMER, District Judge.

■ This is a civil RICO action. Presently before the Court is defendant Bell Savings Bank's motion to dismiss the complaint against it pursuant to Fed.R.Civ.P. 12(b)(6). At issue is whether 18 U.S.C. § 1962(c) permits the imposition of *respondeat superior* liability. I conclude that it does not. Therefore, I will grant Bell's motion to dismiss.

I. BACKGROUND

Plaintiff Ahmed Salvador (Salvador) brought this action against various individuals, two law firms, and Bell Savings Bank (Bell). Salvador alleges that Bell's conduct violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO) and state law negligence principles.

The gravamen of Salvador's complaint is that defendant Carl Mazzocone defrauded Salvador out of large amounts of money through a variety of means. The complaint alleges the following facts. Defendant Mazzocone served as Salvador's lawyer in a personal injury lawsuit in which Mazzocone obtained a $1,415,000.00 settlement on behalf of Salvador. After obtaining the settlement, Mazzocone began to drain a significant portion of the settlement fund away from Salvador and into Mazzocone's own pockets. One way in which Mazzocone depleted the fund was to take a $70,000 check payable to Salvador and open a savings account at Bell with the help of defendant Aristides George Agabides (Agabides). Defendant Agabides served as the branch manager of a Bell bank located at 15th Street and JFK Boulevard in Philadelphia. Mazzocone, with Agabides' assistance, thereafter made eight "structured" cash withdrawals from the Salvador account and pocketed the money.

Salvador alleges the following facts against defendant Bell. Bell constitutes an enterprise within the meaning of 18 U.S.C. § 1961. Amended Complaint at ¶ 47. Bell employed Agabides as a branch manager. *Id.* at ¶ 4. Mazzocone required Salvador to

execute eleven Bell withdrawal slips. *Id.* at ¶ 23. Agabides, Bell's branch manager, helped Mazzocone to open a savings account in Salvador's name, gave the passbook to Mazzocone, and assisted Mazzocone in liquidating the account through a series of structured withdrawals. *Id.* at ¶¶ 27–30. Agabides participated in Bell's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). *Id.* at ¶ 48. Bell was negligent in its supervision of Agabides' actions in connection with the creation and liquidation of the Salvador account. *Id.* at ¶¶ 56–57. The Court notes that *plaintiff expressly relies on the principle of respondeat superior* to impose liability on Bell. *Id.* at ¶ 6; Plaintiff's Answer at pp. 4–15. The complaint alleges no other facts which touch on Bell.

## II.  APPLICABLE LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept the allegations of the complaint as true. The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957) (footnote omitted).

## III.  THE RICO CLAIM

Before discussing Salvador's RICO claim against Bell, it is necessary to examine the structure of the statute. The pertinent terms are defined in § 1961.[1] Section 1964 provides a civil remedy for one injured by reason of a § 1962 violation. Section 1962 with its four subsections prohibits a variety of activities.[2] Plaintiff proceeds against Bell on the basis of *respondeat superior* and § 1962(c). I will now briefly set forth the parties' arguments.

In support of its motion to dismiss, Bell argues that the language of § 1962(c) and the legislative history behind the RICO statute preclude *respondeat superior* liability under § 1962(c). Defendant also cites to *Schofield v. First Commodity Corporation of Boston*, 793 F.2d 28 (1st Cir. 1986), and *Continental Data Systems, Inc. v. Exxon Corp.*, 638 F.Supp. 432 (E.D.Pa. 1986), to support its position.

In opposition to Bell's motion, plaintiff argues that *respondeat superior* liability is appropriate. In support of this position, plaintiff argues that (1) RICO should be liberally construed to effectuate its remedial purpose; (2) Congress did not show any solicitude for enterprises—be they legitimate or illegitimate—which are vehicles of

---

1. Section 1961 provides in part:

    (3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

    (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

    (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

2. Section 1962 provides:

    (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

    (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

    (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

    (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

racketeering activity and; (3) Bell can only be reached through the doctrine of *respondeat superior* and § 1962(c).

I disagree with Salvador's arguments. The language of § 1962, the legislative history, and case law demonstrate that the statute does not permit liability predicated on § 1962(c) and *respondeat superior.* My reasoning is as follows.

### A. *Statutory Language.*

In interpreting RICO the Supreme Court has made clear that the statute's language and construction serve as the starting point for any statutory interpretation. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246, 252 (1981).

▮▮▮ The statute's language supports the conclusion that § 1962(c) does not support the imposition of *respondeat superior* liability. First, the statute requires that the "person" must first be employed by or associated with an "enterprise" before RICO liability can attach to the "person." Therefore, the language of section 1962(c) requires that the "'person" be an entity distinct from the "enterprise." *See B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633-4 (3d Cir.1984). Second, section 1962(c) envisions a particular relationship between the "person" performing the wrongful conduct and the "enterprise" through which the "person" acts. Specifically, the RICO "person" is the active wrongdoer, while the RICO "enterprise" is the passive instrumentality through which the "person" performs the predicate acts. I note that § 1962(c) employs the term "enterprise" as referring to the instrument of the person conducting the racketeering. Thus, § 1962(c)—by its construction—envisions that the "enterprise," or, more precisely, the "association with an enterprise," is an *element* of a § 1962(c) RICO offense. Third, and closely related to the second consideration, there is the fact that the prohibitions of § 1962(c) focus exclusively on the "person" conducting the racketeering activity. Section 1962(c) expressly states "[i]t shall be unlawful for *any person* employed by or associated with any enterprise" to conduct that enterprise's af-

fairs through racketeering. (Emphasis added.) That section by its terms does not make it unlawful for an enterprise to be used as an instrument of racketeering. Consequently, only a "person" can violate the provisions of § 1962(c).

I believe that the statutory construction of § 1962(c) provides little justification for the imposition of liability upon an enterprise via *respondeat superior.* First, it would make little sense for § 1962(c) to require that the person and the enterprise be distinct and that the requirement of an "association with the enterprise" be satisfied and then to impute liability from the racketeering "person" to the "enterprise" simply because the "enterprise" employs the "person." Second, § 1962(c) *makes no mention* of enterprise liability; it exclusively focuses on the "person's" liability.

### B. *Congressional Intent.*

RICO was an aggressive attempt to supplement old remedies and develop new methods for fighting crime. In promulgating RICO, Congress expressed a strong desire to combat the infiltration of legitimate business by organized crime. *See* Pub.L. 91–452, 84 Stat. 922–3 (Statement of Findings and Purpose relating to the Organized Crime Control Act of 1970); *Turkette,* 452 U.S. 576, 591, n. 13, 101 S.Ct. 2524, 2532, n. 13, 69 L.Ed.2d 246, 259, n. 13. Congress also intended that RICO apply to criminal enterprises which lack a legitimate dimension, *see Turkette,* 452 U.S. at 590–3, 101 S.Ct. at 2532–3, 69 L.Ed.2d at 259–60, and serve as a means to destroy the economic foundation of organized crime. *See* S.Rep. 91–617, 1st Sess., at p. 79 (1969) ("Where an organization is acquired or run by defined racketeering methods, then the persons involved can be legally separated from the organization ..."); 116 Cong.Rec. 35193 (1970) (remarks of Rep. Poff).

I recognize that Congress commanded that RICO "be liberally construed to effectuate its remedial purposes." Pub.L. 91–452, § 904(a), 84 Stat. 922, 947; *see also Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 3286, 87 L.Ed. 2d 346, 360 (1985). Nevertheless, that com-

mand should not countenance the unquestioning expansion of RICO liability. Rather, the import of such a command lies with the purposes of the statute.

The imposition of *respondeat superior* liability under § 1962(c) would not advance Congress's purposes and may conflict with such purposes. As previously noted, Congress adopted RICO to combat the infiltration of legitimate businesses by organized crime and to destroy organized crime's economic foundation. Plaintiff's arguments would impose § 1962(c) liability on "enterprises" which are not actively involved in racketeering activity. Imposing liability on "enterprises" which are simply unwitting employers of racketeers or passive instrumentalities for racketeering activity would not advance the preventative and remedial goals of RICO. Such penalties would not be effective because they focus on the medium not the wrongdoer. Placing penalties on an "enterprise" will not prevent "persons" from conducting racketeering activity through the "enterprise" or from continuing to serve as employees of the "enterprise." Thus, such penalties would not advance Congress' goals in passing the statute.

Indeed, I believe that imposing § 1962(c) liability via *respondeat superior* would be inconsistent with the goals of RICO. In passing RICO Congress was motivated, in part, by a desire to eliminate the diseconomies existing in the national economy which resulted from the activities of organized crimes.[3] For instance, the imposition of liability predicated on § 1962(c) and *respondeat superior* would penalize "enterprises" for being the target or vehicle of racketeering activity or for being the employer of a "person" who engages in racketeering activity. The imposition of liability upon an "enterprise" which is simply a racketeering target, an employer, or a passive instrumentality places additional costs on that "enterprise" not as a consequence of the "enterprise's" conduct but as a consequence of the racketeer's conduct. In short, plaintiff would have the "enterprise" pay for the § 1962 violation committed by the racketeer. The end result would be that the "enterprise" would pay the costs of the racketeer's activities—costs which are not necessitated by the free market. On a larger scale, the national economy would also continue to shoulder various costs related to organized crime. Plaintiff's position would result in continued diseconomies and conflict with Congress' Findings[4] and RICO's goal to minimize the economic disruptions caused by organized crime. Requiring a passive "enterprise" to pay penalties because of a racketeer's conduct would stand the statute on its head and result in continued diseconomies. As I have noted previously, such a broad interpretation would convert § 1962(c) into a blunt instrument contrary to the intent of Congress. *Continental Data Systems, Inc. v. Exxon Corp.*, 638 F.Supp. 432, 440 (E.D.Pa.1986).

A review of the legislative history indicates that Congress evinced no desire to extend RICO liability via the doctrine of *respondeat superior* to "enterprises" which are simply employers of racketeers or unwitting, passive instrumentalities for racketeering activity. S.Rep. 91–617, 1st Sess. (1969) at pp. 34, 76–83; H.Rep. 91–1549, 2nd Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4032–4036. In discussing liability and the definition of the term "person," the House Report[5] focused exclusively on the active

---

**3.** *See* "Statement of Findings and Purpose" relating to the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922–3; Congress specifically found that:

"(4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens."

*Accord* 116 Cong.Rec. 607 (1969–70) (remarks of Sen. Byrd); *id.* at 819 (remarks of Sen. Scott); *id.* at 35199 (remarks of Rep. Rodino); *id.* at 35309 (remarks of Rep. Minshall).

**4.** 84 Stat. 923 (Statement of Findings and Purposes relating to the Organized Crime Control Act of 1970).

**5.** H.Rep. 91–1549, 2nd Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007.

wrongdoer. The Report stated, "Any such 'person' who violates the prohibitions of section 1962 is subject to the sanctions of sections 1963 and 1964, below—including forfeiture, divestiture, dissolution, and prohibition of future holding of interest."[6] The Report's discussion of the terms "person" and "enterprise" contained no mention of *respondeat superior* liability.[7] Moreover, in discussing Title IX no member of Congress ever mentioned the possibility that § 1962 would support the application of *respondeat superior* liability.[8] In the words of Judge Coffin of the First Circuit Court of Appeals, "[t]here is unlikely to be a situation, in the absence of an express statement, in which Congress more clearly indicates that *respondeat superior* is contrary to its intent." *Schofield*, 793 F.2d at 32.

### C. Case Law.

Several cases have precluded liability under § 1962(c) based on *respondeat superior*. *Schofield*, 793 F.2d 28; *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–4 (N.D.Ill.1982); *Dakis v. Chapman*, 574 F.Supp. 757, 760 (N.D.Cal.1983) (contrasting the "aggressor enterprise" with the "infiltrated enterprise"); *Continental Data*, 638 F.Supp. 432.

I note that *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1983–4 (D.Del.1984), held that *respondeat superior* could apply to § 1962(c). I do not find *Bernstein* persuasive on this issue. First, *Bernstein* was announced before *B.F. Hirsch*, and, hence, was decided without the benefit of the Third Circuit's decision that the "person" and "enterprise" must be separate. Second, *Bernstein* did not thoroughly analyze how *respondeat superior* would further the goals of RICO and § 1962(c). *See*

*id.* at 1083 & n. 2. As discussed above, I do not believe that *respondeat superior* would further § 1962(c)'s goals. Third, *Bernstein's* reliance on *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 569, 102 S.Ct. 1935, 1944, 72 L.Ed.2d 330 (1982)[9] for the position that imposition of *respondeat superior* liability would be acceptable does not account for the significant differences between the antitrust statutes and RICO. Such differences include the specific relationship and separateness between a "person" and "enterprise" required by § 1962(c) and Congress's goals in adopting RICO as contrasted with Congress' goals in adopting the antitrust statutes. *See Continental Data*, 638 F.Supp. at 440; *Schofield*, 793 F.2d at 33; *accord, Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–4 (N.D.Ill.1982); *see also* Hellerstein & Klinger, "Derivative Liability Under RICO: No Room for *Respondeat Superior*," 1985 ALI–ABA Video Law Review: Civil RICO Litigation after *Sedima*, 185–201.

The language of § 1962(c), the legislative history behind RICO, and persuasive case law support the conclusion that § 1962(c) does not permit the imposition of *respondeat superior* liability.

## IV. STATE NEGLIGENCE CLAIM

■ Plaintiff has also asserted a pendant state law negligence claim against Bell. Since I have dismissed the federal claim against Bell, I also conclude that pendant jurisdiction is no longer appropriate. Consequently, I will also dismiss the negligence claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff, of course, may assert such a claim in state court.

---

6. *Id.* at 4032.

7. *Id.*

8. *See* 116 Cong.Rec. at 591–2 (1969–70) (remarks of Sen. McCellan); *id.* at 602 (remarks of Sen. Hruska); *id.* at 603 (remarks of Sen. Yarborough); *id.* at 35191 (remarks of Rep. Sisk); *id.* at 35196 (remarks of Rep. Celler); *id.* at 35201 (remarks of Rep. MuCulloch); *id.* at 35204–5 (remarks of Rep. Mikva) (criticizing the

bill); *id.* at 35208 (remarks of Rep. Ryan) (criticizing the bill); *id.* at 35215 (remarks of Rep. Halpern); *id.* at 35295 (remarks of Rep. Poff); *id.* at 35321 (remarks of Rep. Price); *id.* at 35328 (remarks of Rep. Meskill); *id.* at 36294 (remarks of Sen. Hruska).

9. *American Society of Mechanical Engineers* concerned the application of *respondeat superior* to antitrust laws.

## V. CONCLUSION

As plaintiff has based his RICO complaint against Bell on the doctrine of *respondeat superior*, I conclude that plaintiff can prove no set of facts which would entitle him to relief. Therefore, Bell's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted. All motions for sanctions between Bell and Salvador are denied.