**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George C. DAVIS, IDT Corp. and
General Dynamics, Defendants,**

**George C. Davis and IDT Corp.,
Defendants-Appellants,
and**

**P. Takis Veliotis, Intervenor-Appellant.**

No. 840, Dockets 82–5041, 82–5043.

United States Court of Appeals,
Second Circuit.

Argued Jan. 14, 1983.

Decided March 15, 1983.

Certiorari Denied June 27, 1983.
See 103 S.Ct. 3554.

Matthew L. Byrne, New York City (Hollman & Byrne, New York City, of counsel), for appellants Davis and IDT Corp.

John H. Gross, New York City (Anderson Russell Kill & Olick, P.C., New York City, of counsel), for intervenor-appellant Veliotis.

David W. Denton, Asst. U.S. Atty., New York City (William M. Tendy, Acting U.S. Atty. S.D.N.Y., Walter P. Loughlin, Asst. U.S. Atty., New York City, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, and CARDAMONE and DAVIS[*], Circuit Judges.

CARDAMONE, Circuit Judge:

The conflict between protection of privacy interests of litigants in confidential material submitted in a civil proceeding and public needs of the grand jury in a criminal investigation is neatly posed by this appeal. Here grand jury subpoenas duces tecum seek to compel production of evidence used in a bankruptcy proceeding—the transcript of a witness' deposition and certain corporate records. Appellants have resisted compliance, claiming that an agreement of confidentiality regarding the deposition and a settlement agreement, which placed the corporate records under a protective order and directed them sealed, shield these items from compelled production.[1]

I

We sketch briefly the background from which this case arose. Frigitemp, a New York corporation formerly engaged in ma-

---

[*] United States Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The seal on those papers previously filed with this Court, i.e., the government's moving papers and the responsive papers of appellants Davis, IDT and General Dynamics Corp., is to the limited extent required by this opinion lifted. A motion made by General Dynamics to keep the record before us sealed and for other relief is similarly denied to the same extent.

rine construction, did substantial business with General Dynamics Corporation, including subcontracting work on vessels being built by General Dynamics at its shipyards in Quincy, Massachusetts. At the time when Frigitemp was involved in this subcontracting, P. Takis Veliotis was General Manager of the General Dynamics Quincy Shipbuilding Division, and George C. Davis was serving as Senior Vice President of Frigitemp in charge of its Quincy subcontracting work. In early 1978 Davis formed a new corporation—appellant Intersystems Design and Technology Corporation (IDT) —and a month or so later Frigitemp filed a petition in bankruptcy in the Southern District of New York. General Dynamics promptly terminated Frigitemp's Quincy subcontracts and awarded them to IDT.

Shortly after Frigitemp filed its petition, the United States Attorney for the Southern District of New York commenced a criminal investigation into the circumstances surrounding the bankruptcy. In January 1980 Bankruptcy Judge Lewittes of the Southern District of New York authorized the trustee in bankruptcy of the Frigitemp estate to investigate causes of action available to the estate, including so-called "business crimes" [2] involving Davis, IDT and several General Dynamics employees. In February 1980 the trustee, utilizing the provisions of Bankruptcy Rule 205, sought to examine General Dynamics by deposing several of its employees, including Veliotis. Because the parties were located in Quincy, ancillary proceedings were conducted before the Bankruptcy Court for the District of Massachusetts. Those to be deposed appeared by counsel who requested a protective order. After a series of hearings before Bankruptcy Judge Lavien of the District of Massachusetts, an "understanding" was reached that afforded limited protection to portions of the testimony and accompanying documents which were later to be designated as containing confidential business information and/or scurrilous allegations of crime.

The Southern District Bankruptcy Court, in June 1980, approved a protective order which restricted the trustee's access to and use of confidential information contained in business records belonging to Davis and IDT. The trustee was only allowed to view these records in counsel's office and could not make copies. However, paragraph 9 of the order provided that "Nothing herein shall preclude IDT from disclosing any confidential information to any person or entity."

In April 1981 a settlement agreement was reached between Davis, IDT and the trustee which required IDT to pay $1.4 million to the Frigitemp estate. It also required the trustee to turn over to IDT all his copies of transcripts of the examinations taken under Rule 205 and exhibits marked at those examinations. The originals were filed with the Clerk of the Bankruptcy Court under seal until the Frigitemp estate was closed, at which time they were to be destroyed.

A grand jury is currently investigating the claimed diversion of $5 million from Frigitemp through bribery, alleged kickbacks, embezzlement and fraudulent misappropriation by means of fictitious invoices and contracts. Appellant Davis is a target of this investigation. In early 1982 grand jury subpoenas duces tecum (which are the subject of this appeal) were issued to Davis and IDT requiring production of the corporate documents discussed above. A similar subpoena was issued to General Dynamics calling for the production of a variety of documents, including the transcript of Veliotis' testimony taken at the Rule 205 examination. The government also moved the Bankruptcy Court for an order permitting

**2.** The use of the words "so-called business crimes" appearing in this record is an unfortunate euphemism. The words suggest that actions, ordinarily considered criminal, that occur in a business setting somehow are not real crimes, but merely corporate transgressions. Of course, no such distinction exists in the law.

Shakespeare resolved a failure to call by name that which something is by saying: "that which we call a rose by any other name would smell as sweet." [Romeo and Juliet, Act II, scene ii]. Similarly, a crime by any other name is still a crime and should be so titled.

it access to the materials under seal.[3] General Dynamics has turned over all the requested records in its possession except the Veliotis transcript. Davis has produced some but not all of the records subpoenaed from him and IDT.

Veliotis was permitted to intervene in order to argue against production of his testimony. On appeal he asserts that General Dynamics need not turn over to the grand jury the transcript of his Rule 205 testimony because he relied on the understanding of confidentiality described above before agreeing to testify. Davis and IDT contend that the terms to the protective order of June 1980 shield them from any obligation to produce the subpoenaed corporate documents; they also urge that the settlement agreement and consequent sealing by the Bankruptcy Court foreclose access by the United States Attorney and the grand jury to those sealed documents in the Clerk's custody.

## II

In pressing their arguments before us appellants rely heavily on our decision in *Martindell v. International Telephone and Telegraph Corp.,* 594 F.2d 291 (2d Cir.1979) (Mansfield, J.). In *Martindell* we were faced with the government's formal and informal attempts to secure evidence covered by a Federal Rule of Civil Procedure 26(c) protective order issued in a civil suit to which it was not a party. In our analysis we stated that the function of a Rule 26(c) protective order is to "secure the just, speedy, and inexpensive determination" of civil disputes. We also noted the policy consideration that encouragement of full disclosure of all relevant evidence is a key objective in the true administration of justice. The court recognized that without enforcement of a Rule 26(c) protective order witnesses might frequently refuse to testify if the government, in disregard of the order, could use the witnesses' testimony for criminal investigatory purposes. *Id.* at 295–96.

Regarding the government's efforts to obtain the information in *Martindell* by means of a telephone call and letter to the court, we held that the government's power to investigate, including use of the grand jury process, cannot be enhanced by such attempts to circumvent a protective order issued in a civil suit. We thus rejected the government's informal attempt to insinuate itself into private litigation.

The government, after being granted the status of a permissive intervenor, formally sought modification of the protective order to allow it access to certain deposition testimony. Since the deposed witnesses in *Martindell* had testified in reliance on confidentiality guaranteed by a formal protective order, the government's motion for modification was denied. The court reasoned that the government had failed to show the element of extraordinary need necessary to obtain modification of a protective order because it still had available its usual arsenal of investigatory weapons, including use of the grand jury process. Specifically reserved was the issue of whether the government might be entitled to enforcement of a subpoena compelling production of civilly protected depositions. *See Martindell,* 594 F.2d at 296 n. 6.

 Ranged against these considerations are the reasons for permitting the grand jury broad subpoena power in a criminal investigation. The awesome power of the government to use the inquisitional function of the grand jury in the compulsion of witnesses' attendance before it has been recognized since our country's founding. *Blair v. United States,* 250 U.S. 273, 280, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919). The grand jury's authority to subpoena witnesses because "the public ... has a right to every man's evidence" is essential to its task. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). A grand jury has wide ranging authority to inquire into suspected viola-

---

**3.** The government does not seek production of Davis' testimony, which was given under a statutory grant of immunity.

tions of the criminal law; and to effectuate such investigations it may compel the production of documentary evidence or the testimony of witnesses, as it deems necessary. *See United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). While the power to summon and the correlative duty of the person summoned to appear is subject to some exceptions, *see Branzburg,* 408 U.S. at 688, 92 S.Ct. at 2660, *e.g.,* a Fifth Amendment claim of self-incrimination, the scope of a grand jury's power to investigate is not narrowly limited, *see Blair,* 250 U.S. at 282, 39 S.Ct. at 471. Wide latitude in gathering evidence is vital to the grand jury's investigative function. Every piece of information bearing on the investigation has importance in the deliberations since the nature of the crime and the identity of the accused are decisions made by the grand jury at the conclusion of its inquiry, not at the beginning. *See id.* at 282, 39 S.Ct. at 471.

The conflict between protection of private material used in a civil proceeding and public need in a criminal prosecution initially posed is easily resolved in this case. Absent applicable grounds for exception, such as a previously asserted Fifth Amendment privilege, no shield protects the civil evidence here from compellable production before the grand jury which subpoenaed it.

### III

■ Veliotis' reliance on *Martindell* is misplaced because his situation is entirely different from that presented in our prior decision. A brief review of the manner in which the "understanding of confidentiality" was reached in this case demonstrates this. On the morning of February 19, 1980, prior to the examination of Veliotis, counsel for General Dynamics requested of Judge Lavien that "the papers in this proceeding," particularly an affidavit and memorandum filed by the trustee and the transcript of the instant discussion, be placed under seal because of "allegations that have been made about individuals at General Dynamics" which were "inappropriate and scandalous." The trustee's attorney consented, ex-

cept that he wanted the documents to be available "to the Courts." Judge Lavien suggested that the lawyers draw up a stipulation. Later that day General Dynamics' counsel requested that any documents supplied be maintained "on a confidential basis" and "under a stipulation of confidentiality" because they included "confidential business information." The court responded that this was not customary and that the record in this case was not such as would require that everything be sealed. Judge Lavien then instructed counsel for General Dynamics that anything produced which counsel thought contained any "proprietary or confidential business information" should be so labeled and, absent disagreement from the opposition, would not be "made available for public dissemination." Significantly, no stipulation of confidentiality was ever reduced to writing, no formal protective order was ever issued by Judge Lavien, and no documents or testimony were ever designated as containing proprietary or confidential business information.

Thus, while *Martindell* involved a formal protective order issued under Rule 26(c), here there was simply an "understanding of confidentiality." Further, the government in *Martindell* was proceeding outside of its usual investigative powers to secure the requested testimony, not by grand jury subpoena.

Finally and most crucially, there is no indication that Veliotis agreed to testify only in reliance on the "understanding." He has not shown us any evidence that he ever designated any of his testimony as containing confidential information, as required by the "understanding." He now claims that the understanding extended beyond that reached in court, due to an alleged out-of-court agreement between counsel. But a court cannot be expected to enforce an agreement of this nature which was never placed before it for approval and which has not even been reduced to writing. Were Veliotis truly concerned about his Fifth Amendment privilege, he would have insisted on something more than an out-of-court discussion or the very limited "under-

standing" outlined by Judge Lavien, before he agreed to testify. He could, for instance, have asserted his Fifth Amendment privilege at the time. *Cf. Garner v. United States,* 424 U.S. 648, 653–56, 96 S.Ct. 1178, 1181–1183, 47 L.Ed.2d 370 (1976) (under certain circumstances, failure to claim a Fifth Amendment privilege constitutes waiver of the privilege). His argument that he did not believe it necessary to claim the constitutional privilege because of his reliance on the "understanding" is undercut by the fact that he apparently never availed himself of the protection afforded him. He has not shown that he in any way indicated which portions of his testimony were confidential and thereby included within the coverage of the understanding. Consequently, his argument that his Rule 205 testimony is "arguably" self-incriminating is now ineffectual.

### IV

We next consider the claims of Davis and IDT. As for the copies of the requested documents sought directly from Davis and IDT, paragraph 9 of the protective order, relied on by appellants to resist compliance, itself permits dissemination of these papers to anyone, *i.e.,* to the grand jury.

As for those copies under seal in the Bankruptcy Court, access to sealed court records is ordinarily obtained by a request addressed to the discretion of the trial court which determines the question in light of the relevant circumstances, *cf. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–1313, 55 L.Ed.2d 570 (1978) (upheld district court's denial of access by third party to former President's tapes used in previous court proceedings). In view of the fact that paragraph 9 of the protective order specifically permitted IDT to disclose "to any person or entity" information contained in the same corporate documents sought from the court, modification of the sealing order was well within the lower courts' discretion. Moreover, these records existed prior to the advent of the litigation and before the settlement agree-

ment, which also contains a sealing provision, was entered into. As such they were previously subject to subpoena and cannot now be protected from grand jury review simply because the parties to the agreement saw fit in their own private interests not to reveal this corporate material to the public. A court may direct access to such material upon a proper showing of need. Here such a showing was amply demonstrated. To have refused access to these records in the face of a subpoena from a grand jury would have been an abuse of discretion. *Cf. Ex parte Uppercu,* 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915) (Holmes, J.) (mandamus lies to compel a judge to unseal documents shown to be material and necessary in litigation, absent a demonstrated privilege).[4]

The orders are affirmed.

---

**4.** An estoppel argument raised by Davis and IDT is without merit.