**In re GRAND JURY SUBPOENAS DUCES TECUM SPECIAL GRAND JURY, SEPTEMBER, 1986 TERM.**

Civ. A. Nos. HAR 87–99, HAR 87–100 and HAR 87–410.

United States District Court, D. Maryland.

April 21, 1987.

Eugene M. Propper, Dwight D. Meier, Lane & Edson, P.C., Anne D. Smith, Christopher M. Curran, White & Case, Washington, D.C., Vincent Ferretti, Jr., Rockville, Md., John R. Fornaciari, Steele, Simmons & Fornaciari and Mark H. Touhey, III, Pierson, Ball & Dowd, Washington, D.C., for movants.

Breckinridge L. Willcox, U.S. Atty., Barbara S. Sale and Joyce McKee, Asst. U.S. Attys., Baltimore, Md., for U.S.

## MEMORANDUM OPINION

HARGROVE, District Judge:

These cases raise a somewhat novel issue in this Circuit: whether the Court can quash the grand jury's subpoena *duces tecum* when the information sought is subject to a protective order in a civil case. The parties have submitted memoranda on the issues, and an oral argument was conducted on March 20, 1987.

## BACKGROUND

The motions seek to quash several subpoenas *duces tecum* that were issued by a special grand jury[1] sitting in this district. Fed.R.Crim.P. 17(c). These subpoenas command a lawyer to appear before the grand jury and bring with him the depositions of several persons involved in multidistrict civil litigation pending in the Eastern District of Virginia. The deponents ("movants") have moved to quash the subpoenas on the grounds that these depositions are subject to a protective order issued by the judge presiding over the civil matter in Virginia.[2]

The protective order came about in the following manner. The movants, who were not parties in the Virginia litigation, were subpoenaed to testify with regard to that case. They were aware that a grand jury had convened in Maryland to investigate aspects of the same issues as were presented in the civil case and the movants were concerned with their fifth amendment privilege against self-incrimination. They sought to defer the civil depositions until the conclusion of the grand jury investigation. After two hearings, the Virginia judge denied a stay but said that he would enter a protective order to deal with the deponents' concerns about their fifth amendment rights.

The protective order strictly limits access to the depositions to persons who are involved in the civil litigation and the order states, "the sealed depositions and the information contained therein shall not be made available to any state or federal investigating agency or authority, and shall not be used in connection with any proceedings other than these actions, except by further order of this Court ..."[3]

The movants relied on this protective order and participated in the depositions.[4] The Government was not involved in the Virginia litigation, and thus was not heard on the issue of whether a protective order should issue.

## DISCUSSION

At the outset, it is worth noting that this Court has consistently seen its role in this

---

1. As part of the Organized Crime Control Act of 1970, Congress authorized the impanelment of special grand juries. 18 U.S.C. §§ 3331–3334. A special grand jury has no special powers different from a regular grand jury; it is simply another grand jury sitting in the district. Its duties are "to inquire into offenses against the criminal laws of the United States alleged to have been committed" within the district. *See e.g., United States v. Koliboski*, 732 F.2d 1328 (7th Cir.1984) (special grand jury did not exceed its authority when it indicted defendant for failure to file income tax returns).

2. The United States Attorney's Office agreed to extend the subpoena date until after this Court ruled on the Motion to Quash.

3. After hearing oral argument in this matter, the Court sent the parties back to the Virginia judge to clarify whether his Protective Order was designed to preclude the grand jury from obtaining the depositions. *See Flavorland Industries, Inc. v. United States*, 591 F.2d 524 (9th Cir.1979). Obviously, if his order did not extend to grand jury subpoenas, there would be no issue for this Court to decide. At a hearing before the Virginia judge, he stated "there isn't any question that when I entered this protective order I intended it to apply to the grand jury as well as any other investigative person or body of the state or federal government." Transcript of 3/27/87 Hearing, p. 8.

4. The Government argues that it is unclear that the movants in fact relied on the protective order: "one claims to have relied on the written order, one claims to have relied on the understanding that an order would be entered, and two evidently sought some sort of nunc-pro-tunc coverage after the first round of subpoenas were issued, notwithstanding the fact that they were not named in the original order."

The Court assumes that there was reliance on the order because it does not affect the Court's analysis below. *But cf. United States v. Davis,* 702 F.2d 418, 422 (2d Cir.), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983) (the assertion by the defendant that he relied on an "understanding of confidentiality" was evaluated by the court but rejected).

dispute narrowly. The only question presented is whether the Virginia court's Protective Order can be the basis on which to quash the grand jury subpoena.

■ The movants have characterized the subpoena *duces tecum* as an attempt to modify the protective order, and they insist that this Court is not the proper forum in which to examine the merits of whether a protective order should have been issued in the Virginia litigation. They assert that the Virginia court is the only one with jurisdiction to vacate or modify that order. The Court agrees that it should not examine the merits of the protective order, but, nevertheless, the Court is faced with the question regarding the enforceability rather than the providence of the protective order. These are distinct issues.

There can be little question that the motion to quash the grand jury subpoena is properly before this Court. In *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291, 294 (2d Cir.1979), where the Government was attempting to challenge a court order restricting access to depositions, the Second Circuit indicated that the Government has two ways of proceeding. The first is to subpoena the deposition transcripts, in which case the issue could be raised by motion to quash or modify the subpoena. The second is to seek permissive intervention in the private action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure and ask the issuing court to vacate or modify the protective order. In the instant dispute, the Government has chosen the first course.

The Court now turns its attention to the merits of the arguments presented. Grand jury subpoenas are governed by Rule 17(c) of the Federal Rules of Criminal Procedure which provides that a court may quash or modify any subpoena *duces tecum* if compliance therewith would be unreasonable or oppressive.

The fifth amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." The Supreme Court has interpreted broadly the power of the grand jury.

Because its task is to inquire into the existence of possible criminal conduct and the return only well-founded indictment, its investigative powers are necessarily broad. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."

*Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) (*quoting Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979.) *See also United States v. Sells Engineering, Inc.*, 463 U.S. 418, 423–24, 103 S.Ct. 3133, 3137–38, 77 L.Ed.2d 743 (1983).

It is a well-settled principle of law that the court supervises the conduct of the grand jury. *See e.g., Blair*, 250 U.S. at 282, 39 S.Ct. at 471 (1919) (A court is "entitled to set limits to the investigation that the grand jury may conduct"); *Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1959) ("A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses"); *Branzburg* 408 U.S. at 708, 92 S.Ct. at 2670 (1972) ("Grand juries are subject to judicial control and subpoenas to motions to quash").

■ Even though the court has the power to oversee the grand jury's conduct, the court should not intervene in the grand jury process absent some compelling reason. *United States v. Dionisio*, 410 U.S. 1, 16–18, 93 S.Ct. 764, 772–73, 35 L.Ed.2d 67 (1973); *In Re Grand Jury Subpoenas, April, 1978 (Harvey)*, 581 F.2d 1103, 1108 (4th Cir.1978) *cert. denied sub nom., Fairchild Industries, Inc. v. Harvey*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). The grand jury is entitled to "every man's evidence" unless the person has a constitutional, statutory, or common law privilege.

*Branzburg,* 408 U.S. at 688, 92 S.Ct. at 2660.

In *United States v. United States District Court,* 238 F.2d 713 (4th Cir.1956), *cert. denied sub nom., Valley Bell Dairy Co. v. United States,* 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957), three of the most well-regarded judges in the Fourth Circuit, Judges Parker, Soper and Sobeloff, granted a writ of mandamus to a district judge who had interfered with the grand jury's investigation. The discussion in that opinion is particularly applicable thirty years later to the instant case:

> [W]e think that the United States is upon the undisputed facts unquestionably entitled to the writ. We do not for a moment question the good faith of the learned and able district judge or think that he was actuated by any motives other than a desire to see that justice was properly administered. We think, however, that the action taken by him interfered unduly with the powers of the grand jury and the proper functions of government counsel in the investigation which the grand jury was conducting. In this connection it must be remembered that, while the grand jury is not independent of the court, it is not subject to the court's directions and orders with respect to the exercise of its essential functions. *See Hale v. Henkel,* 201 U.S. 43, [26 S.Ct. 370, 50 L.Ed. 652]; *Blair v. United States,* 250 U.S. 273 [39 S.Ct. 468, 63 L.Ed. 979].

238 F.2d at 721.

Throughout their briefs, the movants argue that the Government is trying to make an "end run" around the protective order and obtain information through the grand jury that the Government would not be able to obtain on its own. While the truth of the argument may seem to create an unfair result, to hold that the grand jury could not get information unavailable to the Government would ignore the long-recognized distinction between the two entities.

> "Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it served the invaluable function in our society of standing between the accuser and the accused ... to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will."

*Branzburg,* 408 U.S. at 687, n. 23, 92 S.Ct. at 2659 n. 23 (*quoting Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962)). "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (footnote omitted).

On many occasions, the Supreme Court has rejected collateral challenges that impede criminal investigations by the grand jury. In the seminal case of *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), several subpoenaed witnesses refused to appear before the grand jury on the ground that the law that the grand jury was enforcing was unconstitutional. The Court ordered the witnesses to testify, ruling that "an individual is not entitled to challenge the authority of the grand jury, provided they have a de facto existence and organization." *Id.* at 280, 39 S.Ct. at 470. *See also e.g., United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1972) (witness may not deny voice exemplars on the ground that it violates fourth and fifth amendment rights); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (witness may not refuse to respond to grand jury on the ground that the question or request is derived from a prior search or seizure that violated the fourth amendment).

The main case relied upon by the movants is *Palmieri v. State of New York,* 779 F.2d 861 (2d Cir.1985). In that case, a magistrate who was facilitating settlement negotiations issued a protective order providing that all matters related to discovery and the terms of the settlement would not be disclosed to any other person, including

any government agency or instrumentality. In *Palmieri*, the Second Circuit held that the trial court erred by not expressly ascertaining that the state met its burden of proof before the judge modified a protective order in a civil case, thereby releasing evidence to the state grand jury.[5] *Id.* at 864.

To the extent that the *Palmieri* court does not recognize a difference between disclosure to the prosecutor and disclosure to the grand jury, this Court disagrees. Every case relied upon in *Palmieri* recognizes that there is a difference between turning evidence over to the government and turning it over to the grand jury. In *Martindell, supra,* there was no pending grand jury investigation, and the court neither was presented with nor did it decide that issue. *See* 594 F.2d at 296 n. 6, and Medina, J., concurring, 594 F.2d at 298. In *United States v. Davis,* 702 F.2d 418, (2d Cir.) *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983), one of the facts by which the court distinguished *Martindell* was that in *Davis* the government was proceeding by way of grand jury. *Id.* at 421–22. In *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129 (S.D.N.Y. 1976), Judge Frankel held that the Antitrust Division of the Department of Justice, as part of an investigation, could not obtain confidential civil discovery in a case to which the Government was not a party. In support of its holding, the court recognized that the federal government had the powers of the grand jury and the civil investigative demand at its disposal to get this information, and the court would not supplement those powers. *Id.* at 132.

Judge Wisdom discussed the *Martindell* and *Eastman Kodak* decisions when he sat by designation with the Seventh Circuit in *Wilk v. American Medical Association,* 635 F.2d 1295 (7th Cir.1980):

> These cases are distinguishable in that the party seeking access in them was the federal government, which in each case had at its disposal special investigatory

powers not available to private litigants. Thus, the government could have employed a grand jury in aid of its perjury investigation in *Martindell,* and since the antitrust investigation it conducted in *Eastman Kodak* could have led to criminal or civil proceedings, it might have used either a grand jury or the special "civil investigative demand" created by 15 U.S.C. § 1312. As the opinions in both cases suggest, the explicit grant of such extensive investigatory powers should be construed to preclude the implication of supplemental powers, absent unusual circumstances. When the investigator is the government, there is also a unique danger of oppression. This case involves neither circumstance.

*Id.* at 1300 (footnotes omitted).

In this Circuit, there is authority that indicates that the grand jury can obtain information that is subject to a protective order. In *United States v. Foley,* 598 F.2d 1323 (4th Cir.1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 727, 62 L.Ed.2d 728 (1980), the Fourth Circuit was faced with a letter that was obtained by the Government in violation of a civil protective order. The letter was covered by a grand jury subpoena, but was not produced at that stage. In its discussion, the Court said, "[t]he letter was subject to a subpoena and should have been produced during the grand jury investigation." *Id.* at 1337. Implicitly, the Court was saying that something that was inaccessible to the government was available to the grand jury.

In *United States v. Doe,* Crim. No. 79–00073–A–R, slip op. (E.D.Va. Mar. 28, 1980), Judge Merhige was presented with a factual scenario very similar to the one presented here. Judge Merhige had issued a protective order in a civil matter. Subsequently, one of the plaintiff's lawyer was served with two grand jury subpoenas *duces tecum* requiring him to produce documents and deposition transcripts that were covered by the protective order. The grand jury was sitting in the same district

---

**5.** An interesting question not discussed by the parties is whether the New York State grand jury powers are as extensive as the federal grand jury's. For the purposes of this motion, the Court assumes they are.

as the civil litigation, and so Judge Merhige was also assigned the motion to quash. The court described the issue as follows: "[W]hether by virtue of the protective orders entered in this private civil litigation, the grand jury is precluded from securing existing documents and deposition transcripts which it deems appropriate to fulfill its investigatory function, coupled with the issue of privilege, either attorney-client or work product." Slip op. at 5.

In *Doe*, the court denied the motion to quash. The court held that crimes might have been committed during the course of discovery, and that the grand jury's need for this information outweighed the need for witnesses and parties to be more cooperative in civil litigation. The court said,

> Undoubtedly certain of the third parties, and indeed the parties themselves, may have been more cooperative and more comfortable under the umbrella of the protective order, yet, the Court never intended nor contemplated that the protective order might be construed as an inducement to a party to forego constitutional rights, nor did the court envision the order as a protective device against prosecution for criminal activities.

Slip Op. at 7. While that case dealt with crimes committed during the protected discovery, the reasoning of Judge Merhige's opinion is persuasive to this Court.[6]

The movants apparently argue that they were lulled into giving deposition testimony due to the protective order that they otherwise would not have given because of their fifth amendment right not to incriminate themselves.[7] Put another way, the court gave them assurances that their testimony would not be used against them in a criminal setting.

 The problem with enforcing this aspect of the protective order is that the court has no power to grant immunity to a witness. The United States Attorney has *sole* authority to request that immunity be given to a witness. 18 U.S.C. §§ 6002 and 6003. *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir.1973); *Pillsbury v. Conboy*, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983) (discussed below). *Accord United States v. Hunter*, 672 F.2d 815, 818 (10th Cir. 1982); *In re Daley*, 549 F.2d 469 (7th Cir.), *cert. denied sub nom., Daley v. Attorney Registration and Disciplinary Commission of Supreme Court of Illinois*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). The court's duties in entering an immunity order are largely ministerial. *In re Kilgo*, 484 F.2d at 1221. In the Virginia litigation, the court did not even consult with the prosecutor before entering a protective order that had the effect of granting immunity to these witnesses.

The problems that the privilege against self-incrimination creates in the discovery process may on occasion be avoided by use of protective orders. In some cases it may be appropriate to stay discovery in the civil action until the criminal proceeding is terminated and the risk of incrimination is gone. It has been suggested that a protective order impounding the results of the discovery and forbidding disclosure to anyone other

---

**6.** In this case, the government asserts that if the protective order is permitted to stand, the effect would be to shield the deponents from prosecution for perjury because the grand jury could never gain access to the statements. This *in terrorem* argument is not far-fetched, and one which Judge Merhige expressly recognized in the *Doe* opinion. Slip op. at 8.

Several additional worms might escape from the can if the movants succeed. Can a person who becomes a defendant in a criminal case who was privy to the sealed deposition in the civil case use that deposition in the criminal case to cross-examine a witness? If the defendant calls a witness who was deposed in the civil case, does the defendant have to produce the deposition under "reverse Jencks." Fed.R.Crim.P. 26.2.

These potential problems are but a few of those that can arise if a protective order can be enforced against the grand jury. *See* R. Heidt, *The Conjurer's Circle: The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062 (1982).

**7.** Obviously, the Court has not seen the depositions at issue in this matter, and does not know whether the parties invoked their fifth amendment rights therein. The lawyers may have recognized that the Virginia court could not protect them from the grand jury and advised them to assert their rights. Nevertheless, the Court assumes that the movants testified openly in reliance on the protective order.

than the parties would removed the risk of incrimination, but whether the court, in a civil action, can provide protection equivalent to an immunity statute, as is needed if the claim of privilege is to be overcome seems doubtful.

8 C. Wright & A. Miller, Federal Practice and Procedure § 2018 at p. 153 (footnotes omitted). The analysis underlying the Wright and Miller conclusion is that a person cannot be expected to waive his/her fifth amendment privilege unless the immunity received is coextensive with the right. *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *Kastigar v. United States,* 406 U.S. 441, 462, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972).

In *Pillsbury v. Conboy,* 459 U.S. 248, 260–62, 103 S.Ct. 608, 615–16, 74 L.Ed.2d 430, the Supreme Court dealt with the exclusive authority of the executive to grant immunity. In that case, Conboy was granted use immunity for his testimony before the grand jury. Later, Conboy was deposed in a civil case. The United States Attorney refused to grant immunity for this deposition testimony. The questions posed at the deposition mirrored the questions answered with immunity before the grand jury. Conboy refused to answer the deposition questions on the ground of his fifth amendment privilege and was held in contempt. The Supreme Court reversed, holding that Conboy had asserted his fifth amendment right properly because the government had not immunized him, and the court could not. The Court stated:

> No court has authority to immunize a witness. That responsibility, as we have noted, is peculiarly an executive one, and only the Attorney General or a designated officer of the Department of Justice has authority to grant use immunity.

*Id.* at 261, 103 S.Ct. at 616.

Perhaps in recognition of this problem, the Fourth Circuit has expressed a preference that a court stay civil proceedings when there is a risk of self-incrimination by a party. *Shaffer v. United States,* 528 F.2d 920, 922 (4th Cir.1975). *Accord United States v. Kordel,* 397 U.S. 1, 9, 90 S.Ct. 763, 768, 25 L.Ed.2d 1 (1970); *Brock v.*

*Tolkow,* 109 F.R.D. 116 (E.D.N.Y.1985); *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084 (5th Cir.1979); *Dienstag v. Bronsen,* 49 F.R.D. 327 (S.D.N.Y. 1970).

The Supreme Court has discussed the implications arising when there are simultaneous civil and criminal proceedings. In *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the Court held that information obtained by the government in a civil proceeding could be used in obtaining a criminal conviction. Subsequent cases have held that it is not unconstitutional to force a litigant to choose between invoking the fifth amendment right in a civil case, thereby risking a loss, or answering the questions, thus risking criminal prosecution. *See e.g., Baxter v. Palmignano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *United States v. White,* 589 F.2d 1283, 1286–87 (5th Cir.1979); *Arthurs v. Stern,* 560 F.2d 477, 478–79 (1st Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *United States v. Rubinson,* 543 F.2d 951, 961 (2d Cir.), *cert. denied sub nom., Chester v. United States,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

█ If the movants prevail in their motion to quash, they will have created a situation where they can play both sides of the street—they will be permitted to testify in the Virginia litigation without losing any fifth amendment right. The implications are troublesome, especially when examined with regard to litigants, instead of third-parties, in civil actions. Such a result would be contrary to the general rule that the fifth amendment privilege against self-incrimination is lost if not asserted. *See e.g., Kordel,* 397 U.S. at 10, 90 S.Ct. at 768; *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976) (voluntary information supplied in tax return of gambler who did not assert fifth amendment right could be used in criminal prosecution).

In this case, the movants were not parties to the case, and the consequence if they invoked their fifth amendment rights

were less serious than if they were parties subject to civil liability. Rule 26(b) of the Federal Rules of Civil Procedure envisions that privileged information need not be divulged in depositions, and the cases are uniform that a person is justified in refusing to answer a specific question on the ground that it might incriminate him. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2018, pp. 140–42.

The grand jury proceedings are secret. Fed.R.Crim.P. 6. Absent a finding of probable cause that a crime has been committed, the secrecy of those depositions will be maintained. The risk of pre-indictment publicity is not significant. Therefore, the concerns of the Supreme Court in *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), which dealt with Fed.R.Civ.P. 26(c) (the civil analogue to Fed.R.Crim.P. 17(c)) are not present here.

 There is a strong public policy not to impede the prompt investigation by the grand jury. The court cannot interfere with the power of the grand jury except in the clearest cases of abuse. *United States v. United States District Court, supra,* at 722. There has been no allegation of bad faith or improper conduct on the part of the grand jury or the prosecutor that would justify quashing the subpoena.[8]

For these reasons, the Court will not quash the grand jury's subpoena *duces tecum.*

---

8. As mentioned at the outset, this Court believes that the issue before it is very narrow. The movants might be able to claim at a later stage (if they are indicted) that the incriminating statements, if any, were coerced. *See Mid-America's Process Service v. Ellison,* 767 F.2d 684 (10th Cir.1985). This Court expresses no opinion as to the merits of such an argument, but notes that the Fourth Circuit has said that the court should refrain from interfering with the grand jury when "[the] abuse of the grand jury process can be dealt with effectively at another time and in another manner." *In re Grand Jury Subpoenas, April, 1978 at Baltimore*

*(Harvey),* 581 F.2d 1103, 1110 (4th Cir.1978), *cert. denied sub nom., Fairchild Industries, Inc. v. Harvey,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

The possible success of the argument would not have any effect on the validity of the indictment. If an indictment is valid on its face, it is not subject to challenge on the ground that the grand jury acted on the basis of evidence obtained in violation of the defendant's fifth amendment privilege against self-incrimination. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974).