**UNITED STATES of America,**

v.

**Michael P. OSHATZ and Leonard A. Messinger, Defendants.**

**No. 87 Cr. 1000 (RWS).**

United States District Court, S.D. New York.

Nov. 2, 1988.

On Motion to Reconsider Nov. 22, 1988.

---

Rudolph W. Giuliani, U.S. Atty. for S.D. New York, New York City, for U.S.; Robert Cleary, and Christine Gray, Asst. U.S. Attys., of counsel.

Slotnick & Baker, New York City, for defendant Michael P. Oshatz; Barry Ivan Slotnick, of counsel.

Fischetti Pomerantz & Russo, New York City, for defendant Leonard A. Messinger; Ronald P. Fischetti, of counsel.

## OPINION

SWEET, District Judge.

Defendants Michael P. Oshatz ("Oshatz") and Leonard A. Messinger ("Messinger") have moved pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for an order compelling the government to provide statements and testimony the defendants believe are exculpatory. Oshatz also moves to quash government subpoenas for a transcript of a deposition he gave in *McLean Financial Group v. Damaso,* Civ. No. 87–1288–A (E.D.Va.).

For the reasons set forth below, Oshatz's and Messinger's motion for an order compelling discovery is denied, and Oshatz's motion to quash the subpoenas is granted.

*Prior Proceedings*

Oshatz and Messinger are tax lawyers who allegedly engaged in a series of fraudulent transactions in government securities and other instruments to generate false tax deductions based on bogus trading losses and interest expenses. On December 28, 1987, a grand jury returned an indictment charging Oshatz and Messinger with conspiracy, 18 U.S.C. § 371, subscribing to a false tax return, 26 U.S.C. § 7206(1), and aiding in the preparation of a false tax return, 26 U.S.C. § 7206(2). A trial on these charges is scheduled for November 9, 1988.

Pretrial matters have proceeded for some time, with both the government and the defense cooperating in an effort to move the case toward trial. However, two matters remained at issue, the Oshatz and Messinger motion to obtain certain statements and testimony they believe are exculpatory and the government's motion to obtain the deposition testimony Oshatz gave in a civil action in the Eastern District of Virginia.

*Brady Requests*

On August 31, 1988, Oshatz and Messinger sent the government the following discovery request:

[T]he defense respectfully requests disclosure of all relevant *Brady* and *Giglio* information and material.... This request also encompasses but is not limited to evidence or statements made or testimony given by any individual which (a) relates to illegal activity by Edward A. Markowitz or Peter Stefanau in the operation of or related to any of the entities listed in the footnote below [footnote omitted] or (b) relates to the concealing of such activity by Edward A. Markowitz or Peter Stefanau from such individuals including their own lack of knowledge regarding such activity. In particular, this request is intended to reach, but is not limited to, statements made to representatives of the federal government in

connection with the investigation of Hillcrest Government Securities by a federal grand jury in Dallas, Texas, as well as testimony given before such a grand jury by participants on any level in the operation of Hillcrest Government Securities which relates to or reflects the participants' lack of knowledge of illegal activity by Messrs. Markowitz or Stefanau.

The government refused to provide the statements or testimony the defendants requested, characterizing the request as the usual "unwarranted fishing expedition." Government Memorandum at 2. Nevertheless, the government identified five Hillcrest Government Securities ("Hillcrest") principals who may possess information helpful to the defense. By doing so, the government has met any legal obligation it may have to disclose statements or testimony the defendants view as exculpatory.

Oshatz and Messinger ground their discovery request in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Supreme Court in *Brady* ruled that the government violates a defendant's right to due process if it suppresses material evidence defense counsel requests and required the prosecution to disclose "evidence favorable to an accused ... where the evidence is material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. at 1196; *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987) (noting that the government is obligated "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment"). The Supreme Court in subsequent cases has interpreted this rule to require disclosure of impeachment material as well. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Second Circuit has ruled that the government violates *Brady* only if the defendant establishes "two essential elements": (1) the evidence requested is *material*, and (2) the government has *suppressed* the evidence. *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

Nowhere in its papers does the government dispute the materiality of the requested evidence. The issue, therefore, is whether the government "suppressed" this information in violation of *Brady* by just listing the names of five Hillcrest principals. In *United States v. Grossman*, 843 F.2d 78 (2d Cir.1988), the government sent the defendant a letter notifying him that Shimon Lev, one of the participants in the insider trading scheme at issue, had appeared before the grand jury and might have exculpatory information. Upon learning Lev's identity, the defendant asked the government to turn over Lev's grand jury testimony. The government refused. The Second Circuit affirmed the conviction, stating: "The government has no duty actually to turn over the grand jury testimony where the defendant knows of the witness' identity; that the witness 'might have testified before the grand jury'; and that '[the witness'] statements might have supported [the defendant's] defense.'" *Id.* at 85; *see also LeRoy*, 687 F.2d at 618–19.

■ By providing Oshatz and Messinger the names of the Hillcrest principals and informing them that these individuals may possess information helpful to the defense, the government has met its *Brady* obligation. It is now up to Oshatz and Messinger to subpoena these witnesses to take advantage of any exculpatory information they might furnish. *See LeRoy*, 687 F.2d at 619; *United States v. Stewart*, 513 F.2d 957, 600 (2d Cir.1975).

### Motion to Quash Subpoenas

On July 26, 1988, Oshatz gave a deposition in connection with *McLean Financial Group v. Damaso*, Civ. No. 87–1288–A (E.D.Va.). Three days later, the government served a trial subpoena on the court reporting service for a copy of this deposition, pursuant to Federal Rule of Criminal Procedure 17(c). The same day, Oshatz moved before the Honorable Claude M. Hilton of the Eastern District of Virginia for an order sealing his deposition, and the government intervened in opposition.

After hearing argument on this motion, Judge Hilton issued an order sealing the deposition, but provided that "the deposition shall be released to any subpoena for the criminal proceedings pending in the United States District Court for the Southern District of New York." *McLean Financial Group v. Damaso*, Civ. No. 87–1288–A, slip op. (E.D.Va. Aug. 1, 1988). Subsequently, the government served a second trial subpoena for the deposition transcript on one of the civil litigants in the *McLean* action.

On August 2, 1988, Oshatz moved in the Southern District of New York for an order quashing the two trial subpoenas. The next day, the court heard oral argument on the motion. Because the order as written appeared to subject the deposition to subpoena, which was contrary to Oshatz's understanding of Judge Hilton's intentions, the court stayed execution of the subpoena to allow Oshatz to bring a motion in the Eastern District of Virginia to clarify Judge Hilton's order.

Oshatz filed the motion for clarification on August 29, 1988, and Judge Hilton heard argument on the motion on September 29, 1988. During the argument, Judge Hilton stated that he had exempted a trial subpoena from the order to seal Oshatz's deposition in an effort to comply with Fourth Circuit law, which makes civil protective orders unenforceable against criminal subpoenas. September 9, 1988 Transcript at 4 (referring to *In re Grand Jury Subpoena*, 836 F.2d 1468 (4th Cir.1988)). Recognizing, however, that the Southern District of New York should be free to apply the law of the Second Circuit in assessing a motion to quash, Judge Hilton amended his earlier order, making it subject to a "lawfully issued subpoena" in the Southern District. By doing so, Judge Hilton left it to this court to assess the validity of the government's trial subpoenas.

Oshatz has moved to quash the subpoenas on the ground that he gave his deposition in *McLean* with the understanding that a protective order would preserve his Fifth Amendment rights. For support, Oshatz cites *Martindell v. International*

*Telephone and Telegraph Corp.*, 594 F.2d 291, 296 (2d Cir.1979), which stated the applicable rule in this Circuit:

> absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and ... such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation....

*See also H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.*, 797 F.2d 85 (2d Cir.1986); *Palmieri v. State of New York*, 779 F.2d 861, 864 (2d Cir.1985); *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129 (S.D.N.Y.1976).

The government opposes Oshatz's motion to quash, arguing that *Martindell* and its progeny apply only where there is a formal protective order upon which the deponent relied. Government Memorandum at 4 (citing *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139 (2d Cir.), *cert. denied sub nom.* —— U.S. ——, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987); *United States v. Davis*, 702 F.2d 418 (2d Cir.), *cert. denied sub nom.* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983)). According to the government's interpretation of the facts, Oshatz could not have testified relying on a protective order because Judge Hilton declined to issue a formal order denying access to Oshatz's deposition transcript.

However, Oshatz was under criminal indictment in this action when he was asked to give a deposition in the *McLean* civil case. Understandably, Oshatz was reluctant to be deposed because of the pending indictment, and he agreed only after the parties in the civil case stipulated that the deposition would be sealed. Following the deposition, the parties approached Judge Hilton for an order sealing Oshatz's deposition. Judge Hilton issued the order they requested, but included a clause subjecting

the deposition to a subpoena in the Southern District of New York.

The government argues that this clause means Judge Hilton never intended to issue a blanket protective order shielding Oshatz's deposition from subpoena. In fact, however, the only reason Judge Hilton included this exception in his order was to comply with the law in the Fourth Circuit. In the hearing on Oshatz's motion to clarify, Judge Hilton said:

> I think the reason that I put that provision in the order ... is that I think the law in the Fourth Circuit is that these depositions cannot be placed under protective order to be put out of the reach of a grand jury subpoena.... I was reluctant at that time to enter any kind of protective order which I thought would be in conflict with ... what the law is in the Fourth Circuit.

September 9, 1988 Transcript at 4 (referring to *In re Grand Jury Subpoena*, 836 F.2d 1468 (4th Cir.), *cert. denied sub nom.* — U.S. ——, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988)). Responding to Oshatz's motion for clarification, Judge Hilton amended his order to seal the deposition subject to a "lawfully issued subpoena" in the Southern District of New York. In doing so, Judge Hilton issued a protective order sealing Oshatz's deposition, with a caveat that the order would not defeat a Southern District subpoena properly issued in a criminal case. As *Martindell* and its progeny make clear, civil protective orders can be enforced against criminal trial subpoenas.

The Second Circuit stated in *Martindell* as follows:

> the vital function of a protective order issued under Rule 26(c), F.R.Civ.P., ... is to 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders.

*Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979). The Court in *Martindell* conceded "the public interest in obtaining all relevant evidence required for law enforcement purposes." 594 F.2d at 296. However, it found this interest less compelling in light of the fact that " 'the Government as investigator has awesome powers' which render unnecessary its exploitation of the fruits of private litigation." *Id.* (quoting *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129, 132 (S.D.N.Y.1976).

▮ The protective order in this case served the "vital function" described in *Martindell.* At the time Oshatz gave his deposition in the *McLean* action, he had been under federal criminal indictment for almost seven months. As a lawyer, Oshatz no doubt knew his Fifth Amendment rights, and he has consistently resisted the use of his testimony in the criminal action against him. In addition, the government does not seek Oshatz's deposition testimony to aid it in a criminal investigation or grand jury proceeding, having already obtained the indictment before Oshatz gave his deposition in the civil case.

These policies would apply with equal force even if—as the government contends—there was merely a stipulation among the parties to seal Oshatz's deposition, rather than a formal protective order. In *GAF*, 415 F.Supp. at 129, the court enforced a confidentiality agreement among counsel to prevent one of the parties from giving certain documents to the Antitrust Division of the Department of Justice, despite the possibility that the government might use the documents in a grand jury proceeding. Significantly, the court noted that "only two [of the documents] remain subject to the confidentiali-

ty order, [but] all 52 are within the [parties'] understanding that documents produced were given solely for purposes of this litigation.". *Id.* at 130. The Second Circuit has cited *GAF* favorably in subsequent cases enforcing civil protective orders against criminal subpoenas. *See, e.g., Palmieri v. State of New York,* 779 F.2d 861, 864 (2d Cir.1985); *Martindell v. International Tel. & Tel. Co.,* 594 F.2d 291, 296 (2d Cir.1979).[1]

Because the government has not argued that the protective order was improvidently granted or that there are some extraordinary circumstances or compelling need, in view of the holding in *Martindell,* the criminal subpoenas are unenforceable.

*Conclusion*

For the reasons set forth above, Oshatz's and Messinger's *Brady* motion for an order compelling the government to provide certain statements and testimony is denied and Oshatz's motion to quash the government's subpoenas is granted.

It is so ordered.

## ON MOTION TO RECONSIDER

The government has moved this court to reconsider its November 2, 1988, order quashing subpoenas for a transcript of a deposition defendant Michael P. Oshatz ("Oshatz") gave in *McLean v. Financial Group v. Damaso,* Civ. No. 87–1288–A (E.D.Va.1987). For the reasons set forth below, the government's motion to reconsider is denied.

*Prior Proceedings*[1]

In December of 1987, a grand jury returned a federal criminal indictment against Oshatz in the Southern District of New York, and a private plaintiff named Oshatz as a defendant in a civil action in the Eastern District of Virginia. Discovery in the Virginia action proceeded apace, and the court scheduled a trial for mid-July of 1988. Shortly before the trial was to commence, Oshatz moved for a postponement so he could give a deposition and testify at trial. Oshatz's papers in support of his motion included an affidavit in which he stated: "against the advice of criminal counsel, I decided to waive my Fifth Amendment rights and agreed to be deposed and testify at trial."

Oshatz's deposition was scheduled for July 26. Before the deposition began, all those present—and one party's counsel participating by telephone—stipulated orally that Oshatz's deposition testimony would remain confidential to allow Oshatz to petition the Virginia court for a protective order. Following Oshatz's deposition, the government issued two subpoenas in the Southern District of New York for copies of Oshatz's deposition transcript. On September 12, 1988, the Virginia court issued an order sealing Oshatz's deposition, subject to a "lawfully issued subpoena" in the Southern District.

A review of the transcript of the September 9, 1988 hearing preceding this order reveals that the Virginia court added this clause because the law in the Fourth Circuit differed from that in the Second Circuit, not because it intended to create an exception to an otherwise blanket protective order. *Compare In re Grand Jury Subpoena,* 836 F.2d 1468 (4th Cir.) (criminal subpoena enforceable despite protective

---

**1.** The government cites *In re "Agent Orange" Product Liability Litigation,* 821 F.2d 139, 147 (2d Cir.1987) and *United States v. Davis,* 702 F.2d 418, 422 (2d Cir.), *cert. denied sub nom.* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983), for the proposition that *Martindell* applies only where there is a formal protective order. In both cases, however, the court upheld the subpoena because the party did not rely on the protective orders, not because the protective orders were insufficiently formal. *See Agent Orange,* 821 F.2d at 147 ("appellants in the Agent Orange litigation could not have relied on the permanence of the protective order"); *Davis,* 702 F.2d at 422 ("Finally and most cru-

cially, there is no indication that Veliotis agreed to testify only in reliance on the 'understanding.'"). In any event, as noted above, Judge Hilton's order sealing Oshatz's deposition transcript effectively is an appropriate protective order.

**1.** This court's earlier opinion sets forth in detail the circumstances under which Oshatz testified in the *McLean* action and the government's efforts to obtain that testimony. *See United States v. Oshatz,* 700 F.Supp. 696, 698–99 (S.D.N.Y. 1988).

order), *cert. denied sub nom.,* —— U.S. ——, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988) *with Martindell v. International Tel. and Tel. Corp.,* 594 F.2d 291 (2d Cir.1979) (protective order invalidates criminal subpoena). By stating that Oshatz's deposition would be subject to a "lawfully issued" subpoena in the Southern District, the Virginia court left it to this court to apply Second Circuit law in ruling on a motion to quash the subpoenas. *See* Majority Opinion at 699–700.

On August 2, 1988, Oshatz moved in the Southern District of New York for an order quashing the government's subpoenas. In an opinion dated November 2, 1988, this court granted Oshatz's motion, relying on *Martindell* to enforce the protective order against the subpoenas. The November 2 Opinion held in the alternative that a stipulation among counsel to seal Oshatz's deposition also invalidated the subpoenas, even if no formal protective order existed. The government has moved this court to reconsider its order quashing the subpoenas.

*Argument for Reconsideration*

The government's principal argument in support of its motion to reconsider is that this court erred in applying *Martindell* to this case. The government maintains that *Martindell* bars enforcement of a criminal subpoena for a civil deposition only where the deponent gives his deposition relying upon a formal protective order issued pursuant to Rule 26(c) of the Federal Rules of Civil Procedure *prior* to the deposition. This is not the case here, the government contends, because Oshatz did not seek a formal protective order until after he had given his deposition—Oshatz testified relying only upon an oral agreement among counsel to keep the deposition confidential until he petitioned the Virginia court for a formal protective order. The government also asserts that the degree of Oshatz's reliance is questionable because prior to his deposition Oshatz executed an affidavit waiving his Fifth Amendment rights.

*The Martindell Rule*

The Second Circuit in *Martindell v. International Telephone and Telegraph Corp.,* 594 F.2d 291 (2d Cir.1979), affirmed the trial court's decision enforcing a confidentiality stipulation so ordered, stating:

> absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and ... such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation....

594 F.2d at 296. The Court of Appeals ruled that each case requires a court to balance the deponent's interest in confidentiality against the government's need for the protected testimony, and on the facts before it the Court struck the balance in favor of the defendants. *See id.*

The *Martindell* rule has been applied in this circuit in the context of criminal subpoenas and beyond. *See, e.g., Minpeco S.A. v. Conticommodity Servs., Inc.,* 832 F.2d 739 (2d Cir.1987) (enforcing protective order against subpoena issued by administrative law judge in administrative enforcement proceeding); *Palmieri v. State of New York,* 779 F.2d 861 (2d Cir.1985) (enforcing protective orders against investigation by state grand jury and state Attorney General); *FDIC v. Ernst & Ernst,* 677 F.2d 230 (2d Cir.1982) (enforcing protective order against request under Freedom of Information Act, 5 U.S.C. § 552 (1976)); *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys.,* 106 F.R.D. 551 (S.D.N.Y.1985) (enforcing protective order against civil investigative demand by Texas Attorney General and subpoena by New York Attorney General), *aff'd on other grounds,* 797 F.2d 85 (2d Cir.1986).

*The Martindell Rule Applied in This Case*

The facts in *Martindell* are strikingly similar to the facts in this case, with two variations. First, the government in *Martindell* sought the deposition transcripts for use in an ongoing criminal investigation. Here, the government completed its investigation and obtained an indictment long before Oshatz gave his deposition.

Second, the parties in *Martindell* entered a confidentiality stipulation that the court "so ordered" before the deponents testified. Here, the parties entered a confidentiality stipulation to seal the deposition until Oshatz obtained a court order, but Oshatz actually testified before the court issued the protective order.

*Martindell* rested on a belief that enforcing civil protective orders against criminal subpoenas promotes the just, speedy, and inexpensive resolution of civil disputes by encouraging parties to provide testimony and documents they might otherwise withhold. *See Martindell v. International Tel. and Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979). This rationale applies with equal force to confidentiality stipulations among counsel. *See GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129 (S.D.N.Y.1976).[2] *Contra Sharjah Inv. Co. (UK) Ltd. v. P.C. Telemart, Inc.*, 107 F.R.D. 81 (S.D.N.Y. 1985). A confidentiality stipulation among counsel that a court had not so ordered, therefore, would provide some protection against a criminal subpoena, but the party attempting to enforce the stipulation would bear the burden of establishing the need for continued protection. *See H.L. Hayden*, 106 F.R.D. at 554.

█ Because this case involves a confidentiality stipulation formalized by the Virginia court, the government bears the burden of establishing a compelling need for the information. *See Minpeco*, 832 F.2d at 743. Balanced against Oshatz's continued need for protection, the government has failed to establish an interest in the information sufficient to meet that burden.

Oshatz gave his deposition in the *McLean* action relying on a stipulation that his deposition would remain sealed—initially under the terms of the confidentiality stipulation and later according to a protective order. At the time he was deposed, Oshatz had been under federal criminal indictment for almost seven months, and as a lawyer he no doubt knew the full scope of his Fifth Amendment rights. Oshatz's continuing need for protection is obvious: his civil suit in Virginia has been resolved, but the federal criminal case against him is on the eve of trial. Although Oshatz's affidavit states for pre-trial discovery purposes that as of July 14 he was prepared to waive his Fifth Amendment rights, the fact remains that on July 26 Oshatz demanded a confidentiality stipulation before proceeding with his deposition.

Oshatz's continuing need for the confidentiality stipulation's protection outweighs by far the government's need for the deposition transcript for use in the trial. The Second Circuit has recognized that this is not the sort of interest that justifies invalidating a protective order. In *Minpeco*, it stated:

> The CFTC concedes that it has already obtained voluminous discovery in its ongoing administrative action.... Indeed the primary purpose of the CFTC in seeking modification of the protective order is to compare the fruits of plaintiffs'

---

**2.** At oral argument on the motion to reconsider, the government criticized this court's reliance on *GAF Corp. v. Eastman Kodak Co.*, asserting that the Court of Appeals had reversed that case and ordered production of the documents at issue. However, the Court of Appeals has not reversed *GAF Corp. v. Eastman Kodak Co.* and continues to cite it. *See, e.g., Palmieri v. State of New York*, 779 F.2d 861, 864 (2d Cir.1985); *Martindell v. International Tel. & Tel. Co.*, 594 F.2d 291, 296 (2d Cir.1979). Moreover, the Court of Appeals opinion the government was referring to—*United States v. GAF Corp.*, 596 F.2d 10 (2d Cir.) (reversing 449 F.Supp. 351 (S.D.N.Y.1978)), *modified*, 26 Fed.R.Serv. 1327 (2d Cir.1979)—never ordered production of the documents at issue. It interpreted a recent amendment to the Antitrust Civil Process Act, 15 U.S.C. § 1311 *et seq.*, to mean that a civil investigative demand ("CID") "*may* be enforced against a party for documents which it has obtained from the target in discovery," 596 F.2d at 16 (emphasis added), and left open the possibility that a protective order might bar enforcement of a CID. *See id.* at 16; *see also Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 743 (2d Cir.1987) ("the [*United States v. GAF Corp.*] court nevertheless left open the question of what effect the protective order should have on the ultimate decision of whether and to what extent to disclose the fruits of discovery in a given case...."); *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys.*, 106 F.R.D. 551, 553 (S.D.N.Y. 1985) ("[the *United States v. GAF Corp.* court] left to the trial judge's discretion whether to retain the protective order against the government"), *aff'd on other grounds*, 797 F.2d 85 (2d Cir.1986).

**704**

discovery here with the results of its own investigation, in order to evaluate compliance with its own subpoenas and ascertain the truth of much of what it has independently discovered. While these are certainly permissible goals for the CFTC, they do not rise to the level of a "compelling need" under *Martindell.*

*Minpeco,* 832 F.2d at 743. Similarly, the government's interest here is not sufficient to defeat Oshatz's continuing need for relying on the confidentiality stipulation and subsequent protective order in this case.

*Conclusion*

For the reasons set forth above, the government's motion that this court reconsider its November 2, 1988 order quashing the subpoenas for Oshatz's *McLean* deposition transcript is denied.

It is so ordered.